**GOVERNMENT OF the CANAL ZONE,**
**Plaintiff-Appellee,**

v.

**Mauricio BURJAN V. (Villarreta),**
**Defendant-Appellant.**

**No. 77–5554.**

United States Court of Appeals,
Fifth Circuit.

June 11, 1979.

Donice Alverson (Court-appointed), New Orleans, La., for defendant-appellant.

Frank J. Violanti, U. S. Atty., Wallace D. Baldwin, Asst. U. S. Atty., Balboa, Canal Zone, for plaintiff-appellee.

Before HILL and RUBIN, Circuit Judges, and HIGGINBOTHAM,* District Judge.

PATRICK E. HIGGINBOTHAM, District Judge:

Mauricio Burjan V. (Villarreta) was convicted on June 20, 1977 on two counts of grand larceny from the person in violation of 6 C.Z.C. § 1342(2) in a nonjury trial before the United States District Court for the Canal Zone. He was sentenced on August 15, 1975 to serve two concurrent five-year sentences. On appeal, Burjan urges reversal of his convictions on three separate grounds.

* District Judge of the Northern District of Texas, sitting by designation.

## I.  IMPROPER LINEUP

██ Burjan's first argument on appeal is that the lineup at which he was identified by three witnesses may have been improper because it may have occurred after his arraignment, in which case he should have been provided with an attorney.  This contention, however, was not made to the trial court, and has consequently been waived. *United States v. Hicks,* 524 F.2d 1001 (5th Cir. 1975), *cert. denied,* 424 U.S. 946, 96 S.Ct. 1417, 47 L.Ed.2d 353 (1976).  Some courts have reviewed failures to suppress evidence of pretrial identification when raised for the first time on appeal if the failure rose to the level of plain error under F.R.Cr.P. 52(b), *see, e. g., Solomon v. United States,* 133 U.S.App.D.C. 103, 408 F.2d 1306 (1969).  Here, however, there is no plain error; there is no evidence that the lineup was improperly suggestive.  This argument is therefore rejected.

## II.  PROCEDURAL VIOLATIONS

██ Burjan's second argument is that there were several procedural infirmities in the government's prosecution of his case that mandate reversal of his conviction. He argues first that the government failed to comply with the requirements of 5 C.Z.C. § 1, Rule 3.8(2)(a) and 6 C.Z.C. § 4013, because it did not arraign him within 20 days of his arrest.  Rule 3.8(2)(a), however, requires arraignment within 20 days "calculated from the date of the filing of the information."  The information was filed May 6, 1977 and Burjan was arraigned on May 16.  There was no violation of 5 C.Z.C. § 1, Rule 3.8(2)(a).

██ Nor was there a violation of 6 C.Z.C. § 4013.  That section provides as follows:

If it appears from the investigation that a public offense has been committed, and that there is sufficient cause to believe

the defendant guilty thereof, the United States attorney shall, within the 20-day period, file any information against the person  .   .   . .

The defendant apparently reads this provision as requiring the filing of an information within 20 days of the arrest.  This is a misreading of the provision, which requires only that the information be filed within 20 days after the magistrate has acted.  Here the magistrate acted on April 21, 1977, and the information was filed on May 6.  There was no violation of 6 C.Z.C. § 4013.

██ In addition, Burjan alleges two violations of the Federal Rules of Criminal Procedure, which are applicable to the Canal Zone under 6 C.Z.C. § 3501.  He argues that the government failed to comply with the requirement of Rule 5(a) that "[i]f a person arrested without a warrant is brought before a magistrate, a complaint shall be filed forthwith  .   .   . ."  In support of this contention, Burjan points to the fact that complaints were not filed with the district court until May 9, 1977, apparently interpreting the rule as requiring the filing of a complaint with the district court.  The rule, however, does not specifically require that the complaint be filed with the district court; it is sufficient that it be filed with the magistrate.  Here the government filed a complaint with the magistrate on the same day that Burjan was brought before the magistrate.  There was no violation of F.R.Cr.P. 5(a).

██ Burjan also urges reversal of his convictions on the ground that the government violated F.R.Cr.P. 7(e) by amending the information to charge a different offense.  Burjan was initially charged with robbery in violation of 6 C.Z.C. § 2361.[1] Approximately four weeks before trial the information was amended, without leave of court,[2] and Burjan was charged with the lesser offense of grand larceny from the

---

1.  The statute provides as follows:

Whoever, by means of force or fear, feloniously takes personal property in the possession of another, from his person or immediate presence and against his will, is guilty of robbery, and shall be imprisoned in the penitentiary not more than 20 years.

2.  Apparently the parties agreed to the amendment, and leave of court was not sought in part because the Canal Zone was without a district judge for a considerable period of time during 1977.

person, in violation of 6 C.Z.C. § 1342(2).[3] Thus there was a technical violation of F.R. Cr.P. 7(e), which provides that

> The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

The violation, however, does not mandate reversal of the convictions. In the first place, Burjan failed to object to the amendment of the information before trial and thereby waived his objections. F.R.Cr.P. 12(b)(2). In the second place, the technical error was harmless, in that it charged Burjan with a lesser offense than that originally charged. The charge upon which Burjan was tried is a lesser included offense to the robbery charge and Burjan may not be tried later for this offense on the charge of robbery. The violation of Rule 7(e) was harmless, and we disregard it.

## III. JURISDICTION

■ The final and more troublesome challenge to the convictions is Burjan's contention that the government failed to establish that the trial court had jurisdiction because it did not show that the charged offenses were committed in the Canal Zone. It is unimportant, of course, that this point is raised for the first time on appeal, as an attack on the subject matter jurisdiction of the trial court may be raised at any stage. F.R.Cr.P. 12.

There is direct evidence of the place of the thefts. There is, however, no direct evidence in the record that these places were in the Canal Zone.[4] Nor did the trial

judge take judicial notice that the places where the offenses occurred were in the Canal Zone. But it has long been the rule in this circuit that "[p]roof of venue as a jurisdictional fact may be shown by circumstantial evidence as well as by direct evidence . . . . *Weaver v. United States,* 298 F.2d 496, 497 (5th Cir. 1962). In addition, this court has consistently adhered to the rule that venue as a jurisdictional fact is a proper subject for judicial notice. *See, e. g., United States v. Hughes,* 542 F.2d 246 (5th Cir. 1976); *United States v. Anderson,* 528 F.2d 590 (5th Cir.), *cert. denied,* 429 U.S. 837, 97 S.Ct. 105, 50 L.Ed.2d 103 (1976); *United States v. Benson,* 495 F.2d 475 (5th Cir.), *cert. denied,* 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974); *Weaver v. United States, supra.*[5] The question, then, is whether there was evidence at trial from which the trial court could have decided that the places of the offense were in the Canal Zone, or, alternatively, whether there are sufficient facts disclosed by the record that would enable this court by taking judicial notice of Canal Zone boundaries to conclude that the undisputed places of the offenses were within the Canal Zone.

■ Before considering those questions, several preliminary points must be made. First, this court may take judicial notice of governmental boundaries under the Federal Rules of Evidence. Rule 201 permits a court to take judicial notice of an adjudicative fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to

---

**3.** This statute reads:
Whoever, in committing the offense of larceny, takes property;
    (1) which is of the value of $100 or more; or
    (2) from the person of another—is guilty of grand larceny, and shall be imprisoned in the penitentiary not more than 10 years.

**4.** We are not confronted with a trial court record with conflicting evidence as to the place of the offense. We thus do not address the question of whether a trial court finding of guilt carries an implied resolution of a fact dispute concerning jurisdiction. If the trial court did

not take judicial notice of the boundaries, one can question application of a rule of implied findings. If that assumption is not made, we would be both taking judicial notice and resolving a fact question. The point is that an appellate court deciding where an offense occurred and taking judicial notice of boundaries can be distinctly different steps, with distinctly different problems.

**5.** In *Weaver,* this court wrote that "[t]he courts take judicial notice of the boundaries of the nation, of the location of states and territories . . . ." 298 F.2d at 499.

sources whose accuracy cannot reasonably be questioned."

This court has been furnished with maps of the boundary between the Canal Zone and the Republic of Panama, including the location of boundary markers, in the general area where the offenses involved here occurred. The maps were furnished and their accuracy certified by the Chief of Surveys Branch of the Panama Canal Company. They are "sources whose accuracy cannot reasonably be questioned," by resort to which the boundaries of the Canal Zone may be accurately and readily determined.[6]

This court has on several occasions taken judicial notice, or has approved a trial court's taking judicial notice of geographical locations and boundaries. *See United States v. Hughes, supra; Weaver v. United States, supra.* And while there exists no comprehensive authoritative list of the types of sources "whose accuracy cannot reasonably be questioned" and which, therefore, may be judicially noticed, official government maps have long been held proper subjects of judicial notice. *See* 29 Am. Jur.2d *Evidence* § 70. *See also* 21 C. Wright and K. Graham, Federal Practice and Procedure § 5106 (1977).

■ It is also important to note that the boundaries of the Canal Zone may be judicially noticed by this court, even though notice was not taken by the trial court. Rule 201(f) of the Federal Rules of Evidence provides that "[j]udicial notice may be taken at any stage of the proceeding," and the Advisory Committee's note to this provision explains that it permits the taking of judicial notice at any stage, "whether in the trial court or on appeal." Moreover, subsection (g) of the Rule does not preclude the taking of judicial notice in this case. That subsection provides that in criminal cases a jury must be allowed to disregard facts judicially noticed. The Sixth Circuit in *United States v. Jones,* 580 F.2d 219 (6th Cir. 1978), has read this provision as precluding the taking of judicial notice of an element of a crime by an appellate court in a criminal jury case. Without intimating our view as to the correctness of that decision, we note that the considerations that led the Sixth Circuit to its conclusion in *Jones* are not applicable when, as here, the right to jury trial has been waived. Rule 201(g) is, by its terms, inapplicable in a nonjury case. For the same reason it is unnecessary to decide here to what extent, if any, the sixth amendment right to trial by jury limits the power of an appellate court to take judicial notice in a criminal jury case. Finally, the taking of judicial notice of adjudicative facts by an appellate court does not offend the sixth amendment's guarantee of the right to confront witnesses at least where, as here, the facts judicially noticed—the location of geographical boundaries—are indisputable. We conclude, then, that we may take judicial notice of the boundaries of the Canal Zone as a means of determining whether the charged offenses took place within the Canal Zone and, consequently, whether the trial court had jurisdiction over the offenses.

■ The final point that must be made before examination of the record is that, while "[i]t is axiomatic that the prosecution must always prove territorial jurisdiction over a crime in order to sustain a conviction therefor," *United States v. Benson, supra,* at 481, "the standard of proof [on this element] is more relaxed than for other elements of a criminal prosecution. It is necessary only that the location of criminal activity be established by a preponderance of the evidence . . . ." *United States v. Luton,* 486 F.2d 1021, 1023 (5th Cir. 1974).

■ Applying these principles, we conclude that there was insufficient record evidence of the relative locations of the places

---

**6.** We take judicial notice of maps numbered 5037–31 and 6102–11R2, entitled, respectively, "Map of Ancon-Balboa-Diablo Heights-Panama" and "map showing location of Republic of Panama Canal Zone boundary monuments between City of Panama and Canal Zone." The maps are certified by the Chief of Surveys Branch of the Panama Canal Company to truly and accurately represent the Canal Zone-Republic of Panama boundary and boundary monuments in the area of Fourth of July Avenue.

of the thefts and the Canal Zone boundaries. The trial court did not take judicial notice or otherwise hear direct evidence of Canal Zone boundary locations.[7] Yet the record indisputably locates where the theft charged in count I occurred. That fix permits this court to determine, by taking judicial notice of its boundaries, that the offense charged in count I took place within the Canal Zone.

The victim of the first offense, Isabel Caballero, and her cousin, Ada Ponce, who were together at the time of the offense, both testified that when the offense occurred they were walking on the Canal Zone side of the street past the Bridge of the Americas on the way from Amador to Panama City. The maps show that the street upon which they were traveling is either Thatcher Highway or Fourth of July Avenue (a continuation of Thatcher Highway) and that the Canal Zone side of the street is within the boundaries of the Canal Zone. We conclude, then, that the first offense took place within the Canal Zone and that, consequently, the trial court had jurisdiction over this offense. Thus each of the appellant's arguments with regard to count I (the first offense) have been rejected, and the conviction under that count is AFFIRMED.

This same reasoning, however, does not permit affirmance of the conviction under count II. The record does not reveal the location of the offense charged in count II with sufficient accuracy to enable this court to take judicial notice that the location of the offense was within the boundaries of the Canal Zone. The victim of the second offense, Mark Soleday, testified that when the offense occurred he was walking on the Panama side of Fourth of July Avenue "down across the street from the bus stop as you come out of Balboa." Whether Soleday was in the Canal Zone or not depends upon how far down Fourth of July Avenue he had proceeded since coming out of Balboa Road. That cannot be determined from the record, and, consequently, the location of the offense cannot be fixed with sufficient accuracy as to permit this court to take judicial notice that the offense took place within the Canal Zone. Thus, as it cannot be determined that the trial court had jurisdiction over the offense charged in count II, the conviction under that count is REVERSED.[8]

AFFIRMED IN PART AND REVERSED IN PART.

---

7. In this regard, the government argues that the defendant was arrested by Canal Zone police who have jurisdiction only within the Canal Zone, and was taken to a Canal Zone police station and that one of the victims, Mark Soleday, testified that he believed he was in the Canal Zone when the crime was committed. The government also argues that the fact that Burjan's attorney, who was familiar with the geographic boundaries of the Canal Zone, did not raise the jurisdictional point at trial further indicates that the crimes were committed within the Zone. This evidence, however, is insufficient to prove the relative locations of the places of the thefts and the Canal Zone boundaries.

8. It is arguable that the conviction under count II could be affirmed under the concurrent sentence doctrine without reaching the merits of the jurisdictional argument, since the conviction under count I was affirmed and equivalent concurrent sentences were imposed under both counts. See *United States v. Rubin*, 591 F.2d 278 (5th Cir. 1979). Because the *Rubin* case was decided after this case had been briefed and argued, and we have not had the benefit of briefs on the issue from the parties to this case, and because there is some doubt as to the doctrine's applicability to challenges to jurisdiction, we pretermit a decision as to the applicability of the concurrent sentence doctrine and reach the merits of the jurisdictional challenge to the conviction under count II.