**UNITED STATES, Appellee,**

v.

**Jesus BELLO, Defendant, Appellant.**

**No. 98–1831.**

United States Court of Appeals,
First Circuit.

Heard June 11, 1999.

Decided Oct. 19, 1999.

Edgardo Rodríguez–Quilichini, Assistant Federal Public Defender, with whom Joseph C. Laws, Jr., Federal Public Defender, was on brief, for appellant.

Desirée Laborde–Sanfiorenzo, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, Jorge E. Vega–Pacheco and Camille Vélez–Rivé, Assistant United States Attorneys, were on brief, for appellee.

Before SELYA, BOUDIN, and LIPEZ, Circuit Judges.

LIPEZ, Circuit Judge.

Jesús Bello appeals his conviction and sentence for assaulting a fellow prisoner in the Metropolitan Detention Center in Guaynabo, Puerto Rico ("MDC–Guaynabo") in violation of 18 U.S.C. § 113(a)(6). Bello claims that the court erred in taking judicial notice of the jurisdictional element of the offense, namely, that MDC–Guaynabo was within the territorial jurisdiction of the United States. He also claims that the court erred in refusing to instruct the jury on his defenses of self-defense and duress, and in telling the jurors outside of the presence of counsel, in response to a jury inquiry, that self-defense was not applicable in this case. In challenging his sentence, he claims that the court mistakenly believed that it lacked the legal authority to grant a downward departure on grounds of coercion or duress, and that the court erred in refusing to grant a reduction in offense level for acceptance of responsibility. We affirm.

I.

**Factual background**

At the time of the events in question, Bello was a prisoner confined at MDC–Guaynabo where he worked as a food service orderly, serving food to other prisoners. In this capacity, he was responsible for ensuring that food was distributed to all inmates. The victim of Bello's assault, Domingo Santana–Rosa, was also a prisoner in MDC–Guaynabo. Bello testified that Santana frequently sneaked into the food service line and requested seconds even when all other prisoners had not yet eaten. According to Bello, at around 5:00 PM on July 23, 1996, he refused to serve Santana a second helping at dinner because five

other inmates had yet to eat. Santana then told Bello that he and another inmate were "going to crack open [Bello's] head." After making the threat, Santana sat down with several other inmates, including one "Porra." Porra later advised Bello that Santana planned to attack him while Bello was working out in the recreational yard of the prison. Bello testified that he did not report the threat to prison authorities because he feared the repercussions of being labeled a "snitch" by his peers.

On July 25, 1996, at around 11:30 AM, Santana was playing dominoes with other inmates in the recreational yard. Bello noticed Santana's presence, and he became alarmed when he further noticed that the table for playing dominoes, which was ordinarily in the prison's game room, had been moved into the yard where it now stood only a few feet away from where Bello intended to exercise. Bello grabbed a push broom from the corner of the yard and hit the wall of the yard with its handle, stating that it was a good stick for playing baseball. At that point Santana first noticed Bello's presence in the yard, but he continued playing dominoes. Bello removed the handle from the push broom and kept the head. He walked towards Santana and, once behind him, Bello hit him in the back of the head with the push broom head. Santana collapsed, unconscious, and was taken to the hospital where he was operated on to relieve an epidural hematoma (a blood clot under the skull). Santana survived and regained consciousness six days later. The entire incident was captured on videotape.

Bello was indicted on one count of assault within the jurisdiction of the United States (as defined in 18 U.S.C. § 7(3)), in violation of 18 U.S.C. § 113(a)(6). Pursuant to Fed.R.Evid. 201 ("Rule 201"), the government filed a pretrial motion requesting that the court take judicial notice

that MDC–Guaynabo is located within Fort Buchanan, a military base on lands "reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof," and thus is within the "special maritime or territorial jurisdiction of the United States." The pretrial motion was accompanied by documentation [1] tending to prove the requisite elements. The court deferred making a ruling on the motion until trial.

At trial, the government presented before the jury the testimony of Alma López, the legal advisor to the warden of MDC–Guaynabo, who stated that the land on which the prison was located was owned by the federal Bureau of Prisons and was formerly part of Fort Buchanan, but was transferred to the Bureau by the Department of Defense. After cross-examining López, defense counsel objected to the court taking judicial notice of the fact that MDC Guaynabo is under the exclusive jurisdiction of the United States. Because López was not in a position to authenticate the documentation submitted with the pretrial motion, the documents were not admitted into evidence. However, the court examined the documents outside the presence of the jury and concluded that it could take judicial notice (based on both the testimony in evidence and the documents) that the MDC–Guaynabo facility was within the jurisdiction of the United States. The court announced to the jury that it was taking judicial notice of this jurisdictional fact, but informed them that they were "not required to accept as conclusive any fact that the Court has judicially noticed." The jury was similarly instructed before it retired to deliberate.

The court denied Bello's request to instruct the jury on his defenses of duress and self-defense, ruling that there were no facts which justified such instructions. During deliberations, the jury requested

---

1. This documentation consisted of maps and letters from Army officials documenting the transfer to the Department of Justice/Bureau of Prisons, a letter from the Secretary of War

confirming the transfer of the land from Puerto Rico to the federal government, and Puerto Rico legislative acts relating to the transfer.

clarification on the meaning of self-defense. The court responded by informing the jurors that self-defense was not applicable to this case. The jury found Bello guilty of assault.

The court subsequently denied an oral motion by Bello to set aside the verdict on the ground that there was insufficient proof of the jurisdictional element of which the court took judicial notice. Bello then filed a motion for a new trial, arguing that the court erred in failing to instruct on self-defense. The court denied the motion.

Bello was subsequently sentenced to a term of imprisonment of 120 months, 60 months of which was to be served concurrently with the remainder of a previous federal criminal sentence. A supervised release term of 3 years and a special monetary assessment of $100 were also imposed. This appeal ensued.

## II.

### Judicial notice

Bello argues that the court improperly took judicial notice that the assault occurred "within the special maritime and territorial jurisdiction of the United States."[2] In so doing, the Court took judicial notice of an element of the offense for which Bello was convicted.[3] That fact lends particular significance to the judicial notice issue.

 Since the government petitioned, and the trial court ruled, pursuant to Rule 201, we address the conformity of the court's judicial notice determination with that rule. Rule 201 provides in relevant part:

(a) *Scope of rule.* This rule governs only judicial notice of adjudicative facts.

(b) *Kinds of facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

. . . .

(g) *Instructing jury.* In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.

Fed.R.Evid. 201. By its terms, Rule 201 applies only to adjudicative facts, and the parties and the court assumed that the jurisdictional element at issue here involved an adjudicative rather than a legislative fact. They assumed correctly. Whether a fact is adjudicative or legislative depends not on the nature of the fact—e.g., who owns the land—but rather on the use made of it (*i.e.*, whether it is a fact germane to what happened in the case or a fact useful in formulating common law policy or interpreting a statute) and the same fact can play either role depending on context. *See* Fed.R.Evid. 201, Advisory Committee's note ("Adjudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are

---

**2.** The term "special maritime and territorial jurisdiction of the United States," as used in this title, includes:

. . . .

(3) Any lands reserved or acquired for the use of the United States, and under the exclusive or concurrent jurisdiction thereof, or any place purchased or otherwise acquired by the United States by consent of the legislature of the State in which the same shall be, for the erection of a fort, magazine, arsenal, dockyard, or other needful building.

18 U.S.C. § 7(3).

**3.** Title 18 of the United States code provides that:

(a) Whoever, *within the special maritime and territorial jurisdiction of the United States,* is guilty of an assault shall be punished as follows:

. . . .

(6) Assault resulting in serious bodily injury, by a fine under this title or imprisonment for not more than ten years, or both.

18 U.S.C. § 113(a)(6) (emphasis provided).

those which have relevance to legal reasoning and the lawmaking process...."). Where the prison sits is an element of the offense and unquestionably an adjudicative fact,[4] and we review the trial court's decision to take judicial notice under Rule 201 for abuse of discretion. *See United States v. Chapel*, 41 F.3d 1338, 1342 (9th Cir. 1994); *see also Taylor v. Charter Medical Corp.*, 162 F.3d 827, 829 (5th Cir.1998) (applying abuse of discretion standard to refusal to take judicial notice).

■ MDC–Guaynabo's location within the jurisdiction of the United States is the "kind of fact" judicially recognizable under Rule 201(b). To qualify for judicial notice, a fact "must be one not subject to dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The Advisory Committee's note to Rule 201 explains:

> The usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of testimony of the witnesses. If particular facts are outside the area of reasonable controversy, this process is dispensed with as unnecessary. A *high degree of indisputability* is an essential prerequisite.

Rule 201, Advisory Committee's note (emphasis provided).

The trial court based judicial notice on both prongs of Rule 201(b), finding that MDC–Guaynabo's presence within the jurisdiction of the United States is of such common knowledge and can be so accurately and readily determined that it cannot reasonably be disputed. By "generally known" Rule 201(b)(1) "must refer to facts which exist in the unaided memory of the populace; if the fact is one that a reasonable person would not know from memory but would know where to find, it falls within subdivision (2)," not (1). 21 Wright & Graham, *Federal Practice and Procedure* § 5105, at 407 (1977). Although the label "federal penitentiary" might suggest to the average person that MDC–Guaynabo is under the jurisdiction of the United States, it is unlikely that the "reasonable person" has any familiarity with MDC–Guaynabo at all, let alone its jurisdictional status. Hence, Rule 201(b)(1) cannot supply a basis for judicially noticing the jurisdictional fact in this case.

However, judicial notice was proper pursuant to Rule 201(b)(2), based on "sources whose accuracy cannot reasonably be questioned." Indeed, "[g]eography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are not generally controversial and thus it is within the general definition contained in Fed. R.Evid. 201(b)...." *United States v. Piggie*, 622 F.2d 486, 488 (10th Cir.1980); *see also United States v. Blunt*, 558 F.2d 1245, 1247 (6th Cir.1977). Moreover, "official government maps have long been held proper subjects of judicial notice." *Government of Canal Zone v. Burjan*, 596 F.2d 690, 694 (5th Cir.1979). The government submitted to the court official government maps, letters from Army officials, and various legislative acts of Puerto Rico, all tending to show that MDC–Guaynabo was within the jurisdiction of the United States. Although the defense cross-examined López, the legal advisor to the warden of MDC–Guaynabo, suggesting some

---

4. Some other Courts of Appeals have held that Rule 201 is not applicable to judicial notice that a place is within the "special maritime and territorial jurisdiction of the United States," finding this to be a "legislative fact" beyond the scope of Rule 201. *See United States v. Hernandez–Fundora*, 58 F.3d 802, 811 (2d Cir.1995); *United States v. Bowers*, 660 F.2d 527, 531 (5th Cir.1981); *see also* II Kenneth Culp Davis & Richard J. Pierce, *Administrative Law Treatise*, § 10.6, at 155 (3d. ed.1994). *But see* Wright & Graham, *Federal Practice & Procedure* § 5103 n. 16 (1999 Supp.) ("One court has resolved the problem by a dubious holding that the fact that Fort Benning is under the jurisdiction of the United States is a legislative fact," citing *Bowers* ).

"dispute" over López's testimony,[5] it is clear from the record that the trial court based its decision to take judicial notice largely on the maps and other documents submitted by the government whose accuracy was not questioned by the defense.[6] To be sure, the trial court's decision to judicially recognize a fact upon which testimony had already been presented and subjected to cross-examination before the jury was unusual.[7] Nonetheless, the existence of independent and undisputed documentary evidence in the form of government maps, official letters, and public laws provided a sufficient basis for judicial notice under Rule 201(b)(2), irrespective of López's testimony.

■ Concluding that the trial court properly exercised its discretion in taking judicial notice of the jurisdictional fact, we

must decide next whether the trial court correctly adhered to Rule 201's procedures for instructing the jury. Rule 201(g) provides that: "In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed." Fed.R.Evid. 201(g). "Congress intended to ... create one kind of judicial notice for criminal cases and another for civil cases." 21 Wright & Graham, *Federal Practice and Procedure* § 5111, at 274 (1999 Supp.). "In a criminal case, Rule 201(g) treats judicial notice like a presumption; it relieves one party of the need to produce evidence but does not prevent the other party from contesting" the noticed fact with evidence and argument to the jury. *Id.* at 534.[8]

5. López testified that MDC–Guaynabo houses federal prisoners, the Federal Bureau of Investigation investigates criminal offenses within the facility, and the prison is owned by the United States. The defense cross-examined López, eliciting her admissions that state prisoners were sometimes housed at the prison and that she had not actually conducted a title search to determine the ownership of the property.

6. The trial court stated its decision to take judicial notice as follows:

I have reviewed the documents submitted by the United States and I have found maps which to the Court reasonably sound accurate, have not been objected by the defense. And I also have found documents in the matters of laws which clearly indicate to the Court that the property where the MDC Guaynabo is located was first property of the Government of Puerto Rico then became property of Fort Buchanan, and it is now the property of the United States. That's the ruling of the court.

7. Indeed, the trial court was reluctant to take judicial notice. The court denied pretrial motions requesting judicial notice, even after receiving the maps and other documents submitted by the government. At the conclusion of the defense counsel's cross-examination of López, the prosecution again requested that the trial court take judicial notice and, again, the court refused. The government exhorted the court to reconsider its ruling, arguing as follows:

MS. LABORDE [government]: To authenticate and give a statement based on the document submitted to the Court. I would have to bring an engineer or architect to testify as to the authenticity of the document submitted to Court. That's why I cannot use the witness to prove fully that, based on the maps that you have, that MDC is within land acquired by the United States.

The way I'm presenting this evidence to you and to the jury, then I could—I think, I believe I am complying with the fourth element of the offense. First, by submitting documents to you with the witness, using your discretion we can take judicial notice of under Rule 201. And by bringing this witness to state that in fact she's counsel for the institution and that the institution is staffed with federal employees. That only federal offenders go there to be imprisoned, and that the property in which it is located belongs to the United States. And lastly, that the FBI has to go there to investigate criminal offenses as a matter of due course. The Court took a short recess before ruling that judicial notice was proper under Rule 201(b).

8. There is, however, "one fundamental difference between presuming a fact and taking judicial notice of it. A presumption must be based on admissible evidence, but a judge can consult materials not otherwise admissible in order to take judicial notice." 21 Wright and Graham, *Federal Practice and Procedure* § 5102, at 465.

The instruction offered by the court was as follows:

> Even though no evidence has been introduced about it in your presence,[9] I believe that the fact that the Metropolitan Detention Center is within a land reserved for the use of the United States and under its exclusive jurisdiction ... is of such common knowledge and can be so accurately and readily determined from the Metropolitan Detention Center officials that it cannot reasonably be disputed. You may, therefore, reasonably treat this fact as proven even though no evidence has been presented on this point before you.
>
> As with any fact presented in the case, however, the final decision whether or not to accept it is for you to make and you are not required to agree with me.

This instruction was based on a nearly identical instruction from the Eighth Circuit, Model Crim. Jury Instr. 8th Cir. § 2.04 (1989); see also 1 Weinstein's Federal Evidence § 201.34[3] (1999) (quoting Federal Judicial Center Pattern Criminal Jury Instructions, no. 7 (commentary), which is itself based on one of the few opinions treating the application of Rule 201(g), United States v. Deckard, 816 F.2d 426, 428 (8th Cir.1987)). As in Deckard, "[h]ere the trial court meticulously followed the command of Rule 201(g). After having instructed the jury generally on presumption of innocence and burden of proof," 816 F.2d at 428, the court issued an instruction that complied entirely with the dictates of the rule.

 Of course, compliance with Rule 201 does not establish that application of Rule 201 in this case was constitutional. The Sixth Amendment of the Constitution guarantees to a criminal defendant the opportunity for a jury to decide guilt or innocence. See Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). "A necessary corollary is the right to have one's guilt determined only upon proof beyond the jury's reasonable

a charged crime." United States v. Mentz, 840 F.2d 315, 319 (6th Cir.1988); see also Moore v. United States, 429 U.S. 20, 22, 97 S.Ct. 29, 50 L.Ed.2d 25 (1976) (per curiam). "[A] judge may not direct a verdict of guilty no matter how conclusive the evidence." United Bhd. of Carpenters and Joiners v. United States, 330 U.S. 395, 408, United States v. Argentine, 814 F.2d 783, 788 (1st Cir.1987). "A plea of not guilty places all issues in dispute, even the most patent truths." Mentz, 840 F.2d at 320 (internal quotation marks omitted).

Nonetheless, there is widespread agreement that Rule 201(g), which makes judicial notice non-conclusive in criminal cases, adequately safeguards the criminal defendant's Sixth Amendment right to a trial by jury. In rejecting a version of 201(g) that would have made judicial notice conclusive in both civil and criminal cases, Congress emphasized that while a "mandatory instruction to a jury in a criminal case to accept as conclusive any fact judicially noticed is inappropriate because contrary to the spirit of the Sixth Amendment right to a jury trial ... a discretionary instruction in criminal trials," is constitutional. H.R. Rep. 93–650, at 6–7 (1973), U.S. Code Cong. & Admin. News at 7075, 7079–80. Commenting on the original draft of Rule 201 which made the judicial notice non-conclusive in criminal cases (the version ultimately adopted by Congress), the Advisory Committee noted:

> The considerations which underlie the general rule that a verdict cannot be directed against the accused in a criminal case seem to foreclose the judge's directing the jury on the basis of judicial notice to accept as conclusive any adjudicative facts in the case. However, this view presents no obstacle to the judge's advising the jury as to a matter judicially noticed, if he instructs them that it need not be taken as conclusive.

9. This statement overlooks López's testimony on the jurisdictional element.

1 *Weinstein's Federal Evidence* § 201App.01[3] (quoting Fed.R.Evid. 201 Advisory Committee's note (March 1969 draft)).

Moreover, the few courts that have considered the constitutionality of Rule 201 have reached similar conclusions. In *Mentz*, the Sixth Circuit ruled that "[a] trial court commits constitutional error when it takes judicial notice of facts constituting an essential element of the crime charged, *but fails to instruct the jury according to rule 201(g)*." 840 F.2d at 322 (emphasis provided). Similarly, in *United States v. Jones* 580 F.2d 219, 223–24 (6th Cir.1978), the court concluded that Rule 201(g) preserves the jury's "traditional prerogative." [10] More generally, numerous Courts of Appeals have upheld judicial notice that a location is within the jurisdiction of the United States. *See Hernandez–Fundora*, 58 F.3d at 811 (2d Cir.) (federal penitentiary); *Bowers*, 660 F.2d at 531 (5th Cir.) (federal penitentiary); *Piggie*, 622 F.2d at 487–90 (10th Cir.) (federal penitentiary); *United States v. Lavender*, 602 F.2d 639, 641 (4th Cir.1979) (federal highway); *Blunt*, 558 F.2d at 1247 (6th Cir.) (federal penitentiary); *United States v. Hughes*, 542 F.2d 246, 248 n. 1 (5th Cir.1976) (military base); *United States v. Anderson*, 528 F.2d 590, 591–92 (5th Cir. 1976) (per curiam) (federal penitentiary); *United States v. Benson*, 495 F.2d 475, 481 (5th Cir.1974) (military base); *United States v. Miller*, 499 F.2d 736, 739–40 (10th Cir.1974) (federal penitentiary); *Hayes v. United States*, 367 F.2d 216, 218 (10th Cir.1966) (federal penitentiary). Accordingly, we conclude that the trial court did not err by taking judicial notice that MDC–Guaynabo was within the "special maritime and territorial jurisdiction of the United States."

## III.

## Jury instructions

### (a) Self-defense instruction

■ Bello claims that the court erred in refusing to instruct the jury on the elements of self-defense. However, the court correctly found that the facts of this case did not "conform[ ] to the normal understanding of self-defense: a use of force necessary to defend against an imminent use of unlawful force." *United States v. Haynes*, 143 F.3d 1089, 1090 (7th Cir.), *cert denied* —— U.S. ——, 119 S.Ct. 260, 142 L.Ed.2d 214 (1998) (§ 113(a)(6) case) (citing Model Penal Code § 3.04(1) (1962)); 1 Wayne R. LaFave & Austin W. Scott, *Substantive Criminal Law* § 5.7 (1986) (defendant claiming self-defense must show "immediate danger of unlawful bodily harm from his adversary" and that the force used was reasonable and necessary to avoid the danger); First Circuit Pattern Crim. Jury Instr. § 5.04 ("Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force. However, a person must use no more force than appears reasonably necessary in the circumstances.") [11].

■ There was no evidence Bello was in immediate danger at the time he committed the assault in the prison recreational yard. Indeed, the evidence established that a cooling off period of (at minimum) eighteen hours had passed between the

**10.** It even remains unsettled whether 201(g)'s non-conclusive standard, permitting a jury to disregard judicial notice in a criminal case, is constitutionally compelled. "With the exception of Nevada, all of the states with modern codes make judicial notice binding on the jury in all cases, criminal as well as civil." 21 Wright & Graham, *Federal Practice & Procedure* § 5111 n. 17, at 533. Moreover, at least one Court of Appeals has upheld judicial notice in a criminal case where the court did not inform the jury of its right to reject the noticed fact. *See Piggie*, 622 F.2d at 487–90 (upholding judicial notice of federal jurisdiction over Leavenworth Penitentiary).

**11.** This instruction is based on Sixth Circuit Pattern Crim. Jury Instr. § 6.06, itself based on *United States v. Guyon*, 717 F.2d 1536, 1541 (6th Cir.1983).

alleged threat in the dining hall and the assault in the recreation yard. Moreover, "absence of lawful alternatives is an element of all lesser-evil defenses, of which self-defense is one." *Haynes*, 143 F.3d at 1090–91. Bello could have reported the incident to the guards and requested the protection they were required to provide, notwithstanding his assertion that he faced greater danger from other inmates if he were labeled a "snitch." *See Haynes*, 143 F.3d at 1090 (rejecting "snitch" defense to sneak attack on dominoes-playing fellow inmate under § 113(a)(6)). Although "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor," *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 99 L.Ed.2d 54 (1988), here the court correctly found that no reasonable jury could have found that Bello acted in self-defense as the law defines it.[12] The court did not err in refusing to instruct the jury on self-defense.

#### (b) Duress instruction

 "A duress defense has three elements: (1) an immediate threat of serious bodily injury or death, (2) a well-grounded belief that the threat will be carried out, and (3) no reasonable opportunity to escape or otherwise to frustrate the threat." *United States v. Arthurs*, 73 F.3d 444, 448 (1st Cir.1996). As we have already discussed in rejecting the self-defense claim, there was no immediate threat of serious bodily injury or death here, and Bello's claim thus fails at the first step.

### IV.

#### The jury note

 Bello argues in his brief on appeal that the court erred in failing to notify and consult counsel before the court responded to the jury's note requesting "the legal

definition of self-defense." Subsequent to oral argument in this case, the parties stipulated that the court called counsel into chambers in order to discuss the note from the jury requesting clarification on self-defense. This stipulation negates Bello's earlier assertion of error.

 "The preferred practice for addressing a question from a deliberating jury includes ensuring that the question is reduced to writing, marking the note as an exhibit for identification, sharing it with counsel, and affording the lawyers an opportunity to suggest an appropriate rejoinder. Withal, this practice is not the product of an ironclad rule, and the trial court retains a modicum of flexibility to adjust to the exigencies of particular situations." *United States v. Hernandez*, 146 F.3d 30, 35 (1st Cir.1998) (citations omitted). The note was entered into the record, and the stipulation indicates that the court met every other element of the ideal procedure described above. (The parties do differ as to whether a court reporter was present in chambers, and we have no record of what was discussed in chambers, but the stipulation indicates that the note was discussed.)

### V.

#### Sentencing issues

#### (a) Downward departure

 Bello claims that the court erred in not granting his request for a downward departure. Bello's request was predicated on the victim's conduct (i.e. Santana's threat) and coercion and duress, factors which the guidelines explicitly allow a court to consider in departing from the guideline sentencing range. *See* U.S.S.G. §§ 5K2.10 (victim's conduct), 5K2.12 (coercion and duress). "While affirmative decisions to depart from the guidelines are reviewable on appeal, we ordinarily lack jurisdiction to review a decision not to depart, unless the sentencing

---

12. This conclusion is unaffected by the fact that this particular jury, uninstructed on the legal definition of self-defense, requested dur-

ing deliberations that the court clarify the "legal definition of self defense."

court erroneously believed it lacked the authority to depart." *United States v. Portela*, 167 F.3d 687, 708 (1st Cir.1999); *see also* 18 U.S.C. § 3742(f); *United States v. Gifford*, 17 F.3d 462, 473 (1st Cir.1994) ("[A]ppellate jurisdiction may attach if it appears that the failure to depart stemmed from the sentencing court's mistaken impression that it lacked the legal authority to deviate from the guideline range or, relatedly, from the court's misapprehension of the rules governing departures."). Bello claims that the court misunderstood that it could invoke duress and coercion as mitigating factors justifying a downward departure despite the fact that the court had rejected self-defense and duress as complete defenses to conviction. However, nothing in the sentencing transcript supports the argument that the court misunderstood that the departure Bello requested was legally permissible. The sentencing transcript, instead, betrays the incredulity of the trial judge at the factual claim being made. The colloquy between the court and Bello's counsel turned entirely on the facts of the case, and there is no indication that the court believed that a downward departure on these grounds was unavailable as a matter of law. We therefore lack jurisdiction to review the court's discretionary decision not to depart from the guideline sentencing range.

**(b) Adjustment for acceptance of responsibility**

▮ Bello asserts that the court erred in refusing to grant him a two-level downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). Application Note 2 to U.S.S.G. § 3E1.1 states:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by *denying*

*the essential factual elements of guilt,* is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues *that do not relate to factual guilt* (e.g., to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based *primarily upon pre-trial statements and conduct.*

U.S.S.G. § 3E1.1, comment. (n.2) (emphasis added). An assertion of self-defense is a denial of an essential factual element of guilt for the purposes of this guideline section. *See United States v. Branch*, 91 F.3d 699, 742 (5th Cir.1996) (rejecting § 3E1.1 reduction where defendant claimed self-defense); *United States v. Waloke*, 962 F.2d 824, 832 (8th Cir.1992) (same); *see also United States v. Bennett*, 928 F.2d 1548, 1557 (11th Cir.1991) (finding self-defense claim one of several factors supporting inapplicability of § 3E1.1). Moreover, Bello has failed on appeal to refer to any statements or conduct tending to establish that he accepted responsibility prior to trial. The court did not err[13] in denying the adjustment.

***Affirmed.***

---

13. We have defined the standard of review as follows:

> Whether a defendant has, or has not, accepted personal responsibility is normally a fact-dominated issue, and the district court's decision to grant or withhold a reduction in the offense level on that account will not be overturned unless it can be

shown to be clearly erroneous. Nonetheless, questions of law—including interpretive questions concerning the meaning and scope of the sentencing guidelines—engender de novo review. When a sentencing court's factfinding is inextricably inter-twined with an allegedly improper application of the sentencing guidelines, the latter standard of review controls.
*United States v. Talladino,* 38 F.3d 1255, 1263 (1st Cir.1994) (citations omitted).