**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 00-50046

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TOMAS HERRERA-OCHOA, also known as Jose Ochoa-Herrera,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

March 19, 2001

Before REYNALDO G. GARZA, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Tomas Herrera-Ochoa ("Herrera") appeals the district court's finding that the evidence was sufficient to convict him of unlawfully being in the United States after deportation in violation of 8 U.S.C. § 1326 ("§ 1326") as well as the district court's denial of a motion to suppress his Immigration and Naturalization Service ("INS") A-file[1] that he contends is a "fruit" of his illegal

---

[1] An A-file compiles the transactions between the INS and an alien. Herrera's A-file included a Mexican birth certificate, a warrant of deportation, and a photograph. It also contained a statement from Herrera to an INS detention officer that he was born in Mexico, a Warning to Alien Ordered, Removed or Deported, and a certification of non-existence, indicating that he had not applied for permission by the Attorney General to re-enter the United States.

arrest. Because we find that the district court did not err in denying the motion to suppress his A-file, but erred in convicting Herrera, we affirm in part and reverse in part.

FACTUAL & PROCEDURAL HISTORY

While walking in a high-risk crime area, Herrera was arrested by Officer Ruben Mendoza ("Mendoza") in El Paso, Texas, on April 2, 1999, after he and his companion turned and walked away briskly upon seeing Mendoza. After Herrera informed him of his name and birth date, Mendoza was told by a radio dispatcher that Herrera was a possible deported felon. Subsequently, Mendoza accompanied Herrera to police headquarters for fingerprinting and to the Border Patrol office. The immigration authorities at the Border Patrol office placed Herrera's fingerprints through the Ident system and confirmed that Herrera was an undocumented alien. Herrera later confessed to an INS special agent that he was a citizen of Mexico who had previously been deported from the United States and that he had not received permission from the Attorney General to reapply for legal admission.

Herrera was indicted for being an alien, who had illegally re-entered or was "found in" the United States without the consent of the Attorney General, after having been deported in violation of § 1326. See United States v. Flores-Peraza, 58 F.3d 164, 166 (5th Cir. 1995). Herrera moved for suppression of his fingerprints, statements, body, identity, and A-file. The district court only allowed the suppression of his fingerprints and his confession, finding that Mendoza had neither probable cause nor reasonable suspicion to detain Herrera.

The sole testimony at trial was by INS Special Agent Michael Puzio ("Puzio") who testified that from his review of Herrera's A-file, Herrera was "found in" El Paso at the time of his arrest.

2

Puzio also testified that the A-file established that Herrera was deported in 1997 and that he had not applied for permission to re-enter the United States. The government, however, failed to present testimony from Mendoza regarding Herrera's undocumented status or evidence of Herrera's admission regarding his illegal status. In a bench trial, Herrera was subsequently found guilty of illegal re-entry.

## DISCUSSION

### A.  Motion to Suppress the A-File

Herrera asserts that the trial court erred when it denied Herrera's motion to suppress his A-file because it found that Herrera was illegally stopped and seized, and it suppressed his fingerprints and his confession on that basis.[2] Herrera contends that just as his fingerprints were suppressed, his A-file should be suppressed as a fruit of his illegal seizure.

"In reviewing a district court's ruling on a motion to suppress, we review questions of law *de novo*, and accept the trial court's factual findings unless they are clearly erroneous." United States v. Castro, 166 F.3d 728, 731 (5th Cir. 1999). This Court also reviews the evidence in the light most favorable to the government, the prevailing party in the instant case. See id.

A de novo review of the trial court's legal conclusions indicates that it correctly relied on United States v. Roque-Villanueva, 175 F.3d 345, 346 (5th Cir. 1999) (stating that "a defendant's INS file need not be suppressed because of an illegal arrest"), and United States v. Pineda-Chinchilla, 712 F.2d 942, 944 (5th Cir. 1983) (noting that since a defendant "has no legitimate expectation of privacy in the file, he has no standing to challenge its introduction into evidence"). Although Herrera attempts to distinguish these cases from the present case on the basis that the defendants did not establish that

---

[2] Herrera's fingerprints were used to obtain his A-file.

the files were obtained through exploitation of the initial illegality of the defendants' unlawful arrest, we find this argument unavailing.[3] The government correctly argues that although the defendants in those cases may not have established that the file was a "fruit of the poisonous tree," this Court considered these arguments. Pineda-Chinchilla, 712 F.2d at 943 (stating that the question of whether the A-file should "be suppressed as the product of an illegal arrest because [it is] 'the fruit of the poisonous tree'" should be answered in the negative); see also Roque-Villanueva, 175 F.3d at 346 (discussing the "fruit of the poisonous tree" in Pineda-Chinchilla). Therefore, the district court did not err regarding this issue.[4]

B.     Sufficiency of the Evidence

Herrera also argues that the district court erred when it convicted him of violating § 1326 because the government failed to prove beyond a reasonable doubt that he was "found in" the United States on or about the date alleged in the indictment as one of the elements of the crime. The government, however, counters that the district court did not err because Herrera's presence in the United States at the time of his arrest may be inferred from the docket entry, his appearance at trial, and the documents in his A-file.

---

[3] Because we find that this issue is foreclosed by our holdings in Roque-Villanueva and Pineda-Chinchilla, we decline to address whether the government would have inevitably discovered Herrera's A-file.

[4] Herrera further argues that even if the district court correctly relied on Roque-Villanueva and Pineda-Chinchilla, this Court wrongly decided these cases because Wong Sun v. United States, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963), the seminal case defining "fruit of the poisonous tree," supports the proposition that Herrera's A-file should be suppressed. Herrera asserts that so long as a defendant's Fourth Amendment rights were violated, there is no independent requirement that he have standing or a proprietary interest in the items sought to be suppressed. We find this argument unpersuasive given the binding law in this Circuit that A-files may not be suppressed.

This Court must affirm a conviction if a rational trier of fact could have found, viewing the evidence and all inferences therefrom in the light most favorable to the verdict, that the evidence established the essential elements of the crime beyond a reasonable doubt. United States v. Kates, 174 F.3d 580, 582 (5ᵗʰ Cir. 1999). The government argues that United States v. Santana-Castellano, in which this Court held that an undocumented alien was "found in" the United States in prison, is controlling. 74 F.3d 593, 598 (5ᵗʰ Cir. 1996). Addressing a sentencing appeal only we stated:

> [w]here a deported alien enters the United States and remains here with the knowledge that his entry is illegal, his remaining here until he is "found" is a continuing offense . . . [t]his analysis gives common sense effect to the 'found in' language of § 1326, which is obviously intended to extend the definition of the offense to include those situations where the alien is the only one who knows the precise date of his surreptitious entry and knows that he has violated the law in reentering the country after he has been arrested and deported. Id.

Like the indictment in the instant case, the indictment in Santana-Castellano charged the defendant with being found in the United States on a specific date. Id. at 598. The critical distinction between the cases, however, is that the defendant in Santana-Castellano pled guilty to the charge thereby conclusively establishing that he was found in the United States on the date charged in the indictment, given his incarceration at the Texas Department of Criminal Justice for injury to a child. Here, unlike in Santana-Castellano, we have a bench trial and there is no clear record evidence that Herrera was found in the United States on or about April 2, 1999, the date charged in the indictment.

The government argues nonetheless that the docket entry which notes "4/2/99 – Arrest of Tomas Herrera-Ochoa," is record evidence that proves Herrera's guilt. We note, however, that while the docket entry indicates that Herrera was arrested on April 2, 1999, it does not reveal adequate

5

information such that it may satisfy the government's burden to prove an essential element of the crime beyond a reasonable doubt. For instance, the docket entry does not reveal where Herrera was arrested or by whom he was arrested.

The government similarly contends that Herrera's appearance at trial, as well as the documents in his A-file, may be used to infer that Herrera was found in the United States on or about April 2, 1999. We find this argument unpersuasive, given the untenable choice such an argument forces a criminal defendant to make. As Herrera correctly argues, a criminal defendant would be forced to choose between his Sixth Amendment right to be present at trial or his Fifth Amendment due process right that the government prove each and every element of the offense charged against him beyond a reasonable doubt.[5] In Re Winship, 397 U.S. 358, 362, 364 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). The Supreme Court has deemed such a choice, in which "one constitutional right should have to be surrendered in order to assert another," "intolerable." Simmons v. United States, 300 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

The instant case turns on whether or not the government presented sufficient probative evidence to establish beyond a reasonable doubt- the "found in" element it charged in the indictment. For reasons not revealed by the record, the government did not present the same proof at trial that it did at the motion to suppress hearing. Though called at the suppression hearing, Mendoza, the arresting officer, did not testify at trial that he found Herrera in El Paso on April 2, 1999, as charged in the indictment. Likewise, Herrera's admission that he had previously been deported and that he had not been granted permission by the Attorney General to re-enter the United States was not put

---

[5] We note that Herrera first made this argument in his Motion for Judgment of Acquittal and Brief in Support.

6

in evidence at trial. Having survived t he suppression hearing with the A-file still in its quiver, the government relied on this one arrow of evidence in its quest to hit the bullseye.

The district court's oral reasons for judgment of conviction relied principally on the contents of the A-file plus inferences the court as finder of facts drew from the file. Nothing in the transcript suggests that the district court relied on anything it heard at the suppression hearing or on the docket entry that the government clings to in its appellate argument. Premised upon the prior authentication of the A-file as that of Herrera's, the district court compared the photo in the file with the defendant's appearance in court and concluded that they were the same person. Likewise, it credited as accurate and probative the A-file documents showing Herrera's removal from the United States on December 19, 1997, and the absence of documents showing that Herrera had been granted permission to re-enter the United States after the removal date. The court completed its analysis by noting that because Herrera was in the courtroom on November 15, 1999, it was reasonable to infer that he was found in the United States on April 2, 1999, as charged in the indictment.

We are presented with the novel questions of whether the conviction of Herrera under § 1326 by the district court in a bench trial was based on inferences it could properly make as finder of fact or whether the conviction is premised on the court's having taken judicial notice of an elemental fact. Though the government argues on appeal that the district court could properly take judicial notice in a criminal trial, the district court never adverted to having invoked judicial notice as part of its analytical method.

The government suggests, however, that this court may take judicial notice of a district court docket entry regarding Herrera's arrest warrant which, according to the government, establishes that Herrera was in the United States on April 2, 1999. Herrera responds that the docket entry does not

7

indicate where Herrera was located at the time of his arrest and, therefore, it is not the proper subject of judicial notice because it does not indisputably establish that Herrera was in the United States. Herrera further suggests that this Court should not take judicial notice of a fact that is an element of an offense that as such would violate Herrera's due process rights.

Judicial notice may be taken of any fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). An appellate court may take judicial notice of facts, even if such facts were not noticed by the trial court. FED. R. EVID. 201(f); see Government of the Canal Zone v. Burjan V., 596 F.2d 690, 694 (5th Cir. 1979).

This Court has taken judicial notice of facts in a criminal case tried to a judge rather than to a jury. Burjan V., 596 F.2d at 694. In Burjan V., the defendant argued that the government failed to prove that the District Court for the Canal Zone had jurisdiction because it did not show that the alleged offenses occurred within the Canal Zone. Id. at 693. This Court took notice, however, of the boundaries of the Canal Zone, noting that because the defendant had waived a jury, this Court could take notice of facts without offending the Sixth Amendment guarantee of the right to trial by jury. Id. at 694. Further, as the facts were indisputable, there was no violation of the right to confront witnesses.

Whether it is appropriate to take judicial notice in this case of the trial court records, indicating that Herrera was found in the United States, is unclear as such a fact may not be one "whose accuracy cannot reasonably be questioned." Although Herrera admitted his presence in the United States in pretrial pleadings, and although during the suppression hearing, Officer Mendoza

8

testified that he detained Herrera in El Paso on the date alleged in the indictment, the government did not present this evidence at trial. Taking judicial notice of the trial court record arguably infringes on Herrera's Sixth Amendment right to confront witnesses. In <u>Burjan V.</u>, taking judicial notice on appeal did not offend the right to confront witnesses where "the facts judicially noticed- the location of geographical boundaries- are indisputable" as they could be established by reference to official maps. <u>Id.</u> at 694.

Further in <u>Burjan V.</u>, this Court noted that although the prosecution must establish jurisdiction, the standard of proof is merely a preponderance of the evidence. <u>Id.</u> Taking judicial notice in this case of an essential element of the crime, however, potentially infringes on Herrera's right to have each element proved beyond a reasonable doubt.

In addition, the government has neither cited nor have we found any case in which an appellate court has taken judicial notice of an element in a criminal case that was not an adjudicative fact such that it was "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." FED. R. EVID. 201(b). A recent case, however, discussing judicial notice in a criminal context is <u>United States v. Bello</u>, 194 F. 3d 18 (1st Cir. 1999), in which the First Circuit upheld the district court's decision to take judicial notice of the place where the defendant committed assault as being within the territorial and maritime jurisdiction of the United States. The place where the defendant committed assault, a federal penitentiary, was an element of the crime, but was deemed by the court to be an adjudicative fact because it was based on geographical location, was not generally controversial, and was easily proved by official government maps. <u>Bello</u>, 194 F. 3d at 23. While illuminating, this case is not dispositive of the issue before us because it addresses a clear

adjudicative fact: geographical location. In contrast, there is no such clear adjudicative fact in the instant case, as the question of whether or not Herrera was "found in" the United States on or about the date of the indictment is readily disputed nor is it capable of determination by resort to sources whose accuracy cannot be reasonably questioned. Moreover, our conclusion not to accept the government's argument on appeal to take judicial notice of Herrera's whereabouts on or about the date of the indictment is buttressed by the fact that the district court failed to take such action.[6]

The government's trial strategy left the trial court with a dearth of evidence and with only a common sense analysis with which to assess the disputed issues. The court reasoned that Herrera's presence in the court room on November 19, 1999, was necessarily linked to his having been found in the United States on April 2, 1999, as charged in the indictment. To the defendant's argument for a directed verdict of acquittal because of the missing "found in" element, the court responded, "You think they went over to Mexico and brought him to the courtroom today?" As alluring as the district court's finding appears, we conclude after careful review of the record and of the applicable cases, that Herrera's conviction must be reversed. As previously discussed herein, Herrera's presence in the courtroom pursuant to his Fifth and Sixth Amendment rights under the Constitution is not inextricably linked to the government's charge in the indictment.

---

[6] See, e.g., United States v. Hawkins, 76 F.3d 545, 551 (4th Cir. 1995) (declining to take judicial notice of the defendant's identity on appeal when judicial notice was, in fact, neither requested by the government nor taken sua sponte by the trial judge); United States v. James, 987 F. 2d 648, 651 (9th Cir. 1993) (overturning the defendant's robbery conviction on the grounds of insufficient evidence, and refusing to find harmless the government's failure to prove one element of the crime, where judicial notice regarding the existence of the unproven element was neither requested nor taken at trial); Glover v. Cole, 762 F. 2d 1197, 1200 n.6 (4th Cir. 1985) ("Judicial notice is an inappropriate device for remedying a failure of proof").

Simply put, the government had readily available to it all the evidence needed to prove its case.  Its having failed to successfully marshal the evidence at trial, the trial court consequently erred in finding the evidence sufficient to support the conviction.


## CONCLUSION

Because we find that the district court did not err when it denied his motion to suppress his A-file, but that it erred when it convicted Herrera under § 1326, we AFFIRM in part and REVERSE in part.

 AFFIRMED IN PART. REVERSED IN PART.

11

Reynaldo G. Garza, dissenting;

I respectfully dissent in the majority opinion because I believe that we are letting a felon go unpunished.

I first thought that if an alien was in court, his presence there would be sufficient to convict on the point that he was found in the United States. That is what I think the district judge thought when he said this, "Do you think that they went to get him in Mexico and brought him here?" However, I realize that this would raise a constitutional question of the defendant having to testify, so I do not believe that my dissent should be on this point.

The district judge heard all the evidence on the motion to suppress certain evidence and also heard all the evidence presented at trial. The majority is right that some of the evidence presented at the suppression hearing was not presented at the trial.

However, the same district judge heard both the evidence at the suppression hearing and the guilt hearing and he had a perfect right to depend on all the evidence that he had heard in both hearings when he entered is judgment. Therefore, I think that the evidence the majority says was not presented at the trial was not necessary, for it had already been heard by the district judge at the suppression hearing. For this reason, I think the majority makes a mistake in saying that the government failed to prove what they had to prove at the trial, and for this reason I dissent.