IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 02-40628
_____

UNITED STATES OF AMERICA

                    Plaintiff - Appellant

v.

BRIAN MATTHEW MOORE

                    Defendant - Appellee

_____

Appeal from the United States District Court
for the Eastern District of Texas, Beaumont
_____

March 26, 2003

Before KING, Chief Judge, and DeMOSS and CLEMENT, Circuit Judges.

KING, Chief Judge:

     The United States of America appeals the district court's

suppression of approximately one hundred pounds of marijuana and

a pistol found in Defendant Brian Matthew Moore's vehicle.  The

district court granted Moore's suppression motion because it

determined that the police officers' investigatory stop was

transformed into a <u>de facto</u> arrest without probable cause when

the officers handcuffed Moore.  Because we find that, even if the

officers arrested Moore without probable cause, the evidence

uncovered was not the "fruit" of the illegal arrest, we REVERSE.

                **I.  FACTUAL AND PROCEDURAL HISTORY**

**A.   Facts**

This case concerns the admissibility of marijuana and a

firearm found from a search of Moore's vehicle during a traffic stop.  The parties substantially agree on the following facts.

Officers Greg Fountain and Tony Viator noticed Moore swerve onto the shoulder of the road several times, so they initiated a traffic stop.  Officer Fountain approached Moore's car and noticed that Moore was attempting to light a cigar[1] and that Moore's luggage was in the back seat of the vehicle rather than in the trunk.  Officer Fountain then asked Moore to exit his vehicle and produce his driver's license.

Officer Fountain told Moore he was stopped for crossing onto the shoulder of the road three times and then asked Moore how long he had been driving and where he was going.  While Officer Fountain spoke with Moore, Officer Viator contacted dispatch to check Moore's record for any outstanding warrants and to ensure his license was valid.  Officer Fountain told Moore that Officer Viator was running a records check on his license and continued to question Moore.  At one point, Moore reached behind his back and placed his hand near his waist; Officer Fountain then patted down Moore but did not find a weapon.

Officer Fountain asked Moore if he had anything illegal in his vehicle.  Moore stated that he did not but then refused to give Officer Fountain consent to search the vehicle.  According to Officer Fountain - and Moore contests this - Moore appeared increasingly more nervous.  Office Fountain then said, "You're

---

[1]     Officer Fountain testified that, in his thirteen years of experience, he has noticed that an individual may light a cigar or cigarette during a traffic stop to mask the odor of alcohol or drugs.

extremely nervous.  I know you got a load of dope in there from the way you are acting.  Do you want a chance to help yourself? Yes or no?"  Moore did not respond.  Officer Fountain motioned to Officer Viator to retrieve the drug-detecting dog that had been riding along with the officers in their squad car to sniff Moore's car.  Officer Fountain then told Moore to sit on a curb and place his hands in front of his body.  Officer Fountain handcuffed Moore, twice told Moore that he was not under arrest, and then advised Moore of his Miranda rights.

The drug-detecting dog alerted Officer Viator to the presence of narcotics in the vehicle's trunk.  Officer Fountain opened the trunk and found approximately one hundred pounds of marijuana.  Officer Fountain then told Moore he was under arrest and moved Moore's handcuffs from the front to the back of his body.  Officer Fountain searched the rest of the car and found a loaded pistol and additional small amounts of marijuana.

The entire episode – traffic stop, questioning, handcuffing, dog sniff, and search – happened in less than ten minutes.  It was captured on a video tape by a camera mounted on the police car.  The police officers did not receive a response from dispatch on the records check until after the search of Moore's vehicle was complete.

B.  **Procedural History**

Moore was charged with carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. § 924(c) (2000) and with possession of marijuana with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) (2000).  Moore moved to

suppress all evidence obtained from the vehicle search on the ground that Officer Fountain arrested him without probable cause when Officer Fountain placed him in handcuffs and read him his Miranda rights. The United States argued that Officer Fountain did not arrest Moore but only detained him, and, alternatively, that the items found during the search were not the "fruit" of the arrest.

The district court granted Moore's suppression motion. The district court determined that Officers Fountain and Viator had reasonable suspicion to stop Moore for a traffic violation, but that handcuffing Moore turned the traffic stop into a de facto arrest. The district court did not explicitly analyze whether the evidence was the fruit of the illegal arrest but simply held that because the arrest was illegal, the evidence should be suppressed.

The United States now appeals. The United States argues: (1) the police did not arrest Moore when they placed him in handcuffs and read him his Miranda rights; and (2) even if the police did arrest Moore, the marijuana and firearm found during the search of Moore's vehicle were not the "fruit" of the arrest because the police obtained the evidence through a legal independent source, not through the allegedly illegal arrest. Moore adds an issue on appeal, claiming that the appeal should be dismissed because the United States did not show it obtained permission to appeal according to 18 U.S.C. § 3742.

## II. STANDARD OF REVIEW

This court addresses compliance with 18 U.S.C. § 3742 de

novo, as it is a question of statutory interpretation that was not before the district court. See, e.g., United States v. Hanafy, 302 F.3d 485, 487 (5th Cir. 2002).

When reviewing a motion to suppress, this court reviews factual findings for clear error and questions of law de novo. E.g., United States v. Jones, 234 F.3d 234, 239 (5th Cir. 2000). Whether evidence is the "fruit" of police illegality is a legal conclusion that we review de novo. See United States v. Herrera-Ochoa, 245 F.3d 495, 498 (5th Cir. 2001). Further, this court views the evidence in the light most favorable to the party that prevailed in the district court. Id.

## III. DISCUSSION

### A. Whether the United States Demonstrated It Received Permission to Appeal Under 18 U.S.C. § 3742(b)

Moore argues that the United States has not demonstrated that it obtained permission to pursue this appeal under 18 U.S.C. § 3742(b) because it did not provide written documentation of permission in the record. Moore further argues that the requirement that the United States demonstrate compliance with § 3742(b) is jurisdictional so that the United States's "late" compliance (in its reply brief) means this case must be dismissed.

The United States contends that it has demonstrated compliance with the § 3742(b) requirement because it stated in its initial brief that it obtained approval prior to filing its opening brief in this court and then it attached a copy of the Solicitor General's permission letter to its reply brief. The United States contends that the requirement that it demonstrate

it received permission under § 3742(b) is not jurisdictional, so a late showing of compliance does not necessitate dismissal.

The statute at issue, 18 U.S.C. § 3742(b) (2000), states that after the United States files a notice of appeal in a criminal case, "[t]he Government may not further prosecute such appeal without the personal approval of the Attorney General, the Solicitor General, or a deputy solicitor general designated by the Solicitor General."  The purpose of this requirement is "to assure that such appeals are not routinely filed."  S. Rep. No. 98-225, at 154 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3337. In this case, the issue is not whether the United States actually received permission as § 3742(b) requires, but whether the United States properly demonstrated to this court that it received permission.

We agree with all federal circuits that have considered the issue that the requirement that the United States demonstrate it obtained permission according to § 3742(b) is not jurisdictional. See, e.g., United States v. Hendrickson, 22 F.3d 170, 172 n.1 (7th Cir. 1994); United States v. Gonzalez, 970 F.2d 1095, 1101 (2d Cir. 1992); United States v. Hall, 943 F.2d 39, 41 (11th Cir. 1991); United States v. Smith, 910 F.2d 326, 328 (6th Cir. 1990); United States v. Gurgiolo, 894 F.2d 56, 57 n.1 (3d Cir. 1990). Thus, the failure to timely demonstrate permission does not require automatic dismissal.  If the United States never shows that it obtained permission, though, this court will dismiss its appeal.  See United States v. Thibodeaux, 211 F.3d 910, 912 (5th Cir. 2000) ("Because there is no evidence that the Government

ever received § 3742 approval for this appeal, no statement by the Government that it sought or received approval and no analysis that might form the basis for determining that approval was not necessary in spite of the mandatory language of the statute, we dismiss this appeal.").

In United States v. Dadi, we held that if the United States attaches proof of permission to its reply brief, it has sufficiently demonstrated compliance with § 3742(b). See 235 F.3d 945, 955 (5th Cir. 2000), cert. denied, 532 U.S. 1072 (2002). In this case, the United States obtained permission to appeal on July 15, 2002, before it filed its opening brief in this court. The United States stated that permission had been obtained in the "statement of jurisdiction" section of its opening brief. After Moore raised the § 3742(b) issue, the United States attached a copy of the Solicitor General's letter to its reply brief. Because the United States attached a copy of its permission letter to its reply brief, it satisfied 18 U.S.C. § 3742(b) under Dadi.[2]

---

[2]  Moore arguably raises one other issue: that the United States failed to give sufficient notice of appeal under Fed. R. App. P. 4(b)(1)(B) and 18 U.S.C. § 3731. The United States did comply with the applicable notice requirements. Federal Rule of Appellate Procedure 4 states that the United States must file its notice of appeal within 30 days after the later of the entry of judgment or the defendant's notice of appeal. Fed. R. App. P. 4(b)(1)(B). Section 3731 likewise requires that the United States appeal "within thirty days after the decision, judgment or order has been rendered" and certify to the district court that the appeal was not taken for purposes of delay. 18 U.S.C. § 3731 (2000). The district court judgment was entered on March 14, 2002, and the United States filed its notice of appeal on April 9, 2002. The notice of appeal contained the required certification stating the appeal was not taken for purposes of delay. Moore's argument is thus meritless.

**B.   Whether the District Court Erred in Suppressing the Evidence**

The United States challenges the district court's suppression ruling on two grounds.  First, the United States argues that the legal traffic stop was not transformed into an illegal arrest when Moore was handcuffed.[3]  Second, the United States argues that, even if the police illegally arrested Moore, the evidence found in his vehicle was not the "fruit" of the illegal arrest.  Because we agree with the United States on the second issue, we need not reach the first issue of whether the traffic stop was transformed into an arrest when Moore was handcuffed.

The United States argues that the district court erred in automatically suppressing the evidence found during the vehicle search because even if there were an illegal arrest, the evidence from the vehicle search was not obtained as a result of the arrest but rather came from a legal independent source.  The United States reasons that the police could legally detain Moore

---

[3]   The United States points out that handcuffing a suspect does not automatically convert a detention into an arrest; the key question is whether the officers behaved unreasonably in failing to use less intrusive means to conduct their investigation safely.  See, e.g., United States v. Jordan, 232 F.3d 447, 450 (5th Cir. 2000) ("Handcuffing a suspect does not automatically convert an investigatory detention into an arrest requiring probable cause.  The relevant inquiry is whether the police were unreasonable in failing to use less intrusive procedures to safely conduct their investigation.") (citation omitted).  The United States argues, based on the testimony of the officers, that the officers acted reasonably in handcuffing Moore because they were concerned for their own safety and believed that Moore posed a flight risk.  Further, the United States notes that the officers repeatedly advised Moore that he was not under arrest and the officers did not engage in any other show of force.  While we do not decide the issue, there are certainly several factors suggesting that the investigatory stop may not have risen to the level of a de facto arrest.

until the check of his record was complete, the check of Moore's record was not yet complete when the dog sniff occurred, the dog sniff gave the police probable cause to search Moore's car, and the search revealed the incriminating evidence. Thus, the United States argues, the police found the evidence through a chain of legal activities and not as a result of the allegedly illegal arrest.

Moore argues that the evidence must be suppressed because the allegedly illegal arrest tainted the search of his vehicle. Moore reasons that the officers decided to use the drug-detecting dog based on his refusal to consent to a vehicle search. Moore also argues that the officers' "excessive" questioning made his detention illegal.

Evidence obtained as a result of the exploitation of an illegal search or seizure should be suppressed. See Wong Sun v. United States, 371 U.S. 471, 488 (1963) (suppressing evidence obtained "by exploitation of [police] illegality" but not evidence obtained "by means sufficiently distinguishable to be purged of the primary taint") (citation omitted). Evidence that is not obtained as a result of police illegality, but rather through a legal "independent source," need not be suppressed. See Murray v. United States, 487 U.S. 533, 537 (1988). Under the "independent source" doctrine, "if not even the 'but for' test can be met [so that the evidence would not have been found but for police illegality], then clearly the evidence is not a fruit of the prior Fourth Amendment violation." 5 Wayne LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.4(a), at 236

(3d ed. 1996).

In this case, the officers did not obtain the evidence as a result of the alleged arrest; the evidence was the product of legal police activity. That is, every step the officers took in uncovering the evidence was constitutionally permissible. Put another way, the fact that Moore was handcuffed is irrelevant because handcuffing Moore did not cause the officers to find the evidence. The officers detained and questioned Moore while awaiting the results of the check of his record. Moore's detention was constitutionally permissible because an officer may detain an individual until a check of his record is complete. See United States v. Dortch, 199 F.3d 193, 198 (5th Cir. 1999), op. corrected on denial of reh'g, 203 F.3d 883 (2000); see also United States v. Shabazz, 993 F.2d 431, 436-37 (5th Cir. 1993) ("The questioning that took place occurred while the officers were waiting for the results of the computer check. . . . Because the officers were still waiting for the computer check at the time they received consent to search the car, the detention to that point continued to be supported by the facts that justified its initiation."). The officers had a drug-detecting dog sniff Moore's car, which is also permissible because a dog sniff of a vehicle is not a Fourth Amendment "search" requiring individualized suspicion. See United States v. Place, 462 U.S. 696, 706-07 (1983). The results of the dog sniff gave the officers probable cause to search Moore's car, so the search that uncovered the evidence was justified. See, e.g., Chambers v. Maroney, 399 U.S. 42, 48 (1970) ("[A]utomobiles and other

conveyances may be searched without a warrant . . . provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize."). Thus, the police officers obtained the evidence in this case though a series of lawful steps. The evidence was simply not the product of police illegality.

United States v. Ibarra-Sanchez is on point. See 199 F.3d 753, 760-62 (5th Cir. 1999). In that case, the police had reasonable suspicion to stop a van based on facts suggesting that the van contained marijuana. See id. at 758-60. The police stopped the van, approached the van with guns drawn, ordered passengers to exit the car and kneel on the ground, and handcuffed the passengers and placed them in patrol cars. See id. at 757. The passengers argued that the investigatory stop became an "arrest" not supported by probable cause. See id. at 760. The panel determined that "even if the show of force by the officers constituted an illegal arrest, it would not affect our ultimate disposition because neither the drugs nor the statements were products of the alleged post-stop arrest." Id. at 761 (emphasis added). Because the police smelled marijuana as they approached the vehicle, they had probable cause to search the vehicle. See id. at 762. "[I]t made no difference to the ultimate result whether the[] [defendants] stood by the side of the road or sat handcuffed in police cars: in either situation, the officers would have discovered the marihuana and arrested them." Id. Similarly, in this case the officers would have obtained the evidence through lawful means whether or not they

handcuffed Moore.

Moore makes no argument about how the <u>handcuffing</u> led to the search of his vehicle.  Moore argues that his refusal to consent to a vehicle search led to the dog sniff, but the police do not need individualized suspicion to conduct a dog sniff because it is not a Fourth Amendment search.  Moore also contends that his nervousness in response to the officers' questioning led to the dog sniff, but the police are allowed to question suspects while awaiting the results of a records check.[4]  Moore does not argue that it was the handcuffing that made him appear more nervous and that is why the officers had the dog sniff his car.  Indeed, it appears from the record that the police <u>first</u> decided to have the dog sniff the vehicle, <u>then</u> handcuffed Moore because they were concerned about him trying to flee during the sniff and subsequent search.  The district court assumed that if an illegal arrest took place, suppression of the evidence found during the vehicle search was warranted.  But here, the alleged arrest was not even the "but-for" cause of the search.  The evidence was obtained through an independent source and thus suppression of the evidence is not appropriate in this case.

## IV.  CONCLUSION

For the foregoing reasons, the district court's suppression order is REVERSED and the case is REMANDED for further proceedings.

---

[4]     Though Moore argues that "excessive" questioning may transform an investigative stop into an arrest, this circuit has rejected that argument in cases where the questioning does not increase the duration of the stop.  <u>See</u> <u>Shabazz</u>, 993 F.2d at 436-37.

DeMOSS, SPECIALLY CONCURRING:

Because (1) a drug sniffing dog alerted to the exterior of the trunk of Moore's vehicle; (2) that alert occurred prior to the time the arresting officers got any response to the license check they initiated as a result of making a traffic stop of Moore's vehicle; and (3) such alert of a drug sniffing dog does not constitute any kind of illegal search or seizure, I conclude that the officers had reasonable suspicion to search the trunk of Moore's car. Accordingly, I concur in the panel decision to reverse the District Court's order suppressing the drugs found in the trunk of Moore's vehicle. But for these circumstances, however, I would have concluded that the conduct of Officer Fountain in placing handcuffs on Moore and ordering him to sit on the side of the road would have constituted a warrantless arrest without probable cause and the drugs discovered thereafter would have been suppressed as the fruit of an illegal search made without Moore's consent.