FILED
United States Court of Appeals
Tenth Circuit

June 17, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff–Appellee,

v.

ROBERT NATHANIEL FORBES,
JR.,

      Defendant–Appellant.

No. 07-2191

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CR-06-1578 RB)**

---

Dennis J. Candelaria, Assistant Federal Public Defender, Las Cruces, New Mexico, for the Defendant–Appellant.

Terri J. Abernathy, Assistant United States Attorney (Gregory J. Fouratt, United States Attorney, with her on the brief), Office of the United States Attorney, Las Cruces, New Mexico, for the Plaintiff–Appellee.

---

Before **BRISCOE**, **LUCERO**, and **TYMKOVICH**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

---

Robert Nathaniel Forbes, Jr., appeals the denial of his motion to suppress

91.6 kilograms of marijuana recovered from the tractor portion of his tractor-

trailer rig during a search of his vehicle at a New Mexico border checkpoint. For purposes of the motion, the district court assumed that an initial search performed by border agents, which involved only the truck's trailer and which did not uncover any contraband, might have violated the Fourth Amendment. It reasoned, however, that the agents' subsequent search of the tractor, which occurred only after a drug-sniffing canine alerted to contraband during an exterior sniff of the vehicle, was constitutionally permissible because that search relied on probable cause established from an independent source of information: the canine's alert.

On appeal, Forbes urges that the district court erroneously applied the independent source doctrine because that doctrine only applies in cases involving two entirely discrete searches. We disagree. Consistent with the district court, we conclude that the challenged evidence was admissible because it was discovered through means independent of any unconstitutional action that the agents may have taken. Even assuming that a border agent first searched the interior of the trailer without consent or probable cause, no incriminating evidence was found during that search, and the subsequent canine alert provided an independent source of suspicion to search the interior of the tractor, where the marijuana was discovered. Exercising jurisdiction under 28 U.S.C. § 1291, we therefore affirm.

# I

## A

In the early morning hours of April 13, 2006, Forbes drove his tractor-trailer rig into the permanent border checkpoint on Highway 70, near Alamogordo, New Mexico. Forbes was initially greeted by United States Customs and Border Protection Agent Lance Hubert in the primary inspection area of the checkpoint. Hubert asked Forbes whether he was a United States citizen, and Forbes replied that he was. During the brief exchange, Hubert observed a curtain separating the sleeping compartment of the tractor from the area where Forbes was sitting, and Hubert inquired whether anyone else was traveling with Forbes. According to Hubert, Forbes quickly "changed his demeanor, turned, looked at the curtain, paused, hesitated, came back and said, 'No.'" Hubert then asked Forbes whether he could visually inspect the area behind the curtain, and, according to Hubert, Forbes refused the request.[1] Because he suspected that Forbes might be carrying either unauthorized aliens or illegal drugs, Hubert asked Forbes whether he would allow a canine to sniff the vehicle. Forbes consented, and the agent directed him to the checkpoint's secondary inspection area ("secondary inspection").

---

[1] Forbes testified, in contrast, that he complied with the agent's request and pulled the curtain back, and that Hubert then looked inside. But this minor discrepancy in testimony has no bearing on the issue presented by this appeal.

Once the truck was in secondary inspection, Hubert instructed Forbes to exit his vehicle. Forbes stepped out of the tractor and locked the cab door behind him. Meanwhile, Hubert went to retrieve his canine, and other agents directed Forbes to wait near the rear of the trailer. The precise sequence of events that followed was the subject of a factual dispute between the parties. For purposes of the suppression motion, however, the district court simply accepted Forbes' version of events, and it is that version upon which we decide the instant appeal.

According to Forbes, the agents first directed him to unlock the rear doors of the trailer being pulled. Forbes complied, explaining in his testimony that the agents never asked him to consent to a search of the trailer, and that he did not know he could refuse the agents' request to open the trailer.[2] Either Forbes or the agents then broke the seal on the trailer door and opened it. Hubert entered the trailer with his canine and canvassed the interior, walking the dog between the gun safes Forbes was shipping. When the dog failed to alert to the trailer's contents, Hubert exited and Forbes relocked the trailer. Hubert then led the canine to sniff around the exterior of the entire tractor-trailer rig.

There is relative agreement regarding what happened during the canine sniff of the exterior of the vehicle. Hubert began by running his dog around the

---

[2] In contrast to Forbes' statements on the stand, three agents specifically testified that the trailer doors were not opened until after Hubert had already discovered four bundles of marijuana in the sleeping compartment of the tractor portion of the truck.

outside of the truck, commencing at the rear of the passenger side of the trailer and proceeding along the side of the trailer towards the tractor. Hubert stated that when the canine approached the passenger's side of the tractor, she alerted to the presence of a controlled substance by changing her posture and by increasing her respiration. As the agent moved the dog around the front of the tractor, she continued to alert and finally stopped and "indicated" the presence of contraband at the driver's side door by using a pinpoint stare.[3] Given the dog's reaction, Hubert asked another agent to obtain consent from Forbes to open the door and to allow the canine to enter the tractor.[4]

Either Forbes or one of the agents standing near him then unlocked and opened the driver's side door of the tractor, and the canine jumped inside. Once in the interior of the tractor's cab, the dog went behind the curtain and indicated in the direction of four large bundles behind the driver's seat. On determining

---

[3] At the suppression hearing, Hubert explained at length the distinction between a drug-detection canine's "alert" to the presence of contraband and a canine's "indication" to the location of the same. Specifically, he testified that a properly trained canine will "alert" to the presence of contraband when it first encounters a known odor by changing its body posture and by increasing its respiration. By contrast, the same dog will "indicate" the precise location of that contraband through some other change in behavior, such as by staring, sitting, scratching, biting, or barking. Such an "indication" is generally given at the point where the odor of the contraband is at its strongest. Hubert also stated that the canine used in this case was trained as a "passive indicator," meaning that she would generally sit or stare where an odor she was trained to detect was at its strongest, rather than scratch, bite, or bark as an "aggressive indicator" would do.

[4] It is unclear from the record if Forbes actually gave his consent to open the door. Again, Forbes' consent is not critical to the resolution of this appeal.

that the bundles contained 91.6 kilograms of marijuana, the agents placed Forbes under arrest. No contraband was ever discovered in the trailer of the vehicle.

**B**

Following Forbes' arrest, a federal grand jury indicted him for possession with intent to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and aiding and abetting the same, in violation of 18 U.S.C. § 2. Forbes pleaded not guilty and moved to suppress the drugs recovered at the checkpoint. In support of his motion, he contended that the border agents violated the Fourth Amendment by entering the trailer portion of his rig without consent, probable cause, or a warrant. As the result of this alleged constitutional violation, Forbes maintained that any evidence recovered after the canine later indicated to the presence of contraband in the tractor was tainted and therefore inadmissible against him under the exclusionary rule.

After an evidentiary hearing during which the aforementioned facts came to light, the district court denied Forbes' motion to suppress. Although the court recognized a significant factual dispute regarding whether Hubert and his canine entered the trailer before, rather than after, the canine performed a sniff inspection of the truck's exterior, the court declined to make the credibility determinations necessary to resolve the factual dispute. Instead, the court simply assumed that, as Forbes testified, the agents searched the trailer first, prior to guiding the canine around the exterior of the truck. But even having accepted

Forbes' version of events, and having assumed that the search of the truck's trailer violated the Fourth Amendment, the district court concluded that the drugs were not subject to exclusion. Because the canine alerted to the tractor during an exterior sniff of the truck, the court reasoned that the agents had an independent source of probable cause to search the cab, and that the evidence was therefore admissible against Forbes. In addition, as nothing was discovered in the trailer, the court concluded that the unconstitutional search of that portion of the vehicle could not have led the agents to search the tractor, and the drugs were therefore not "the fruit of the allegedly unlawful search of [the] trailer."

Forbes eventually proceeded to trial, and a jury found him guilty of possession with intent to distribute the marijuana. The district court sentenced Forbes to 30 months' imprisonment, and this appeal followed.

**II**

Forbes brings only one issue for our review: He contends that the district court erred in denying his motion to suppress based on the independent source doctrine, a well-recognized exception to the exclusionary rule. In evaluating the district court's denial of Forbes' motion to suppress, we view the evidence in the light most favorable to the party prevailing below—in this case, the government—and we accept the district court's findings of fact unless they are clearly erroneous. United States v. Cheromiah, 455 F.3d 1216, 1220 (10th Cir. 2006). Our review of the underlying legal question of Fourth Amendment

reasonableness is de novo, and Forbes bears the burden of establishing that the search violated the Fourth Amendment. Id.

**A**

Fourth Amendment protection against unreasonable searches and seizures by the government extends to those entering the United States at border checkpoints. See United States v. Martinez-Fuerte, 428 U.S. 543, 556 (1976). However, certain well-established principles applicable to border checkpoints and canine searches limit the issues in Forbes' appeal. For example, our jurisprudence holds that "border patrol agents may stop, briefly detain, and question individuals [at permanent border checkpoints] without any individualized suspicion that the individuals are engaged in criminal activity." United States v. Massie, 65 F.3d 843, 847 (10th Cir. 1995) (citing Martinez-Fuerte, 428 U.S. at 562). Additionally, "border patrol agents have virtually unlimited discretion to refer cars to the secondary inspections area," United States v. Sanders, 937 F.2d 1495, 1499 (10th Cir. 1991) (quotation omitted), and may make such referrals without any particularized suspicion of criminal activity, Martinez-Fuerte, 428 U.S. at 563-64; see also United States v. Ludlow, 992 F.2d 260, 263-64 (10th Cir. 1993).

Jurisprudence regarding exterior canine inspections at the border is equally settled. Agents are free to conduct such inspections so long as the vehicles and their occupants are otherwise lawfully detained at the time of the inspection. See

- 8 -

United States v. Morales-Zamora, 914 F.2d 200, 203 (10th Cir. 1990); see also

Illinois v. Caballes, 543 U.S. 405, 409 (2005).  At the border, canine inspections

are permissible even in the absence of individualized suspicion and even without

the consent of the vehicle's driver or occupants.  Massie, 65 F.3d at 848; see also

United States v. Williams, 403 F.3d 1203, 1207 (10th Cir. 2005) ("A canine sniff

on the exterior of a vehicle during a lawful traffic stop does not implicate

legitimate privacy interests.").  Moreover, a canine's alert to the presence of

contraband during an exterior sniff of a vehicle gives rise to probable cause for

agents to search that vehicle's interior.  See United States v. Rosborough, 366

F.3d 1145, 1152 (10th Cir. 2004); United States v. Ludwig, 10 F.3d 1523, 1527-

28 (10th Cir. 1993).

Notwithstanding these principles, other Fourth Amendment protections

apply even at border checkpoints.  Significantly, the Fourth Amendment

unquestionably prohibits the search of a vehicle's interior unless law enforcement

officials receive consent, have a warrant, or otherwise establish probable cause to

support the search.  United States v. Sukiz-Grado, 22 F.3d 1006, 1009 (10th Cir.

1994).

Given the foregoing, Forbes does not challenge his brief detention,

Hubert's questions, or the agent's decision to refer him for secondary inspection.

Forbes instead argues that border agents ran afoul of the Fourth Amendment when

Hubert and his canine entered the interior of his truck's trailer without consent,

probable cause, or a warrant. He asserts that given this unlawful act, any evidence uncovered during the agents' subsequent activities is inadmissible against him. As to the initial part of this argument, we agree. If Hubert and his dog entered the trailer before they obtained consent from Forbes or established probable cause, their actions may well have violated Forbes' Fourth Amendment rights. See United States v. Winningham, 140 F.3d 1328, 1330-31 (10th Cir. 1998) (officer violated the Fourth Amendment when he opened a vehicle door and allowed a drug dog to search it without first obtaining probable cause or consent); Sukiz-Grado, 22 F.3d at 1009. But the seized drugs were not recovered during an unconstitutional search of the trailer, and thus our agreement on that score alone does not definitively resolve the case. Instead, whether the evidence recovered is properly subject to suppression as a result of an assumed constitutional infirmity turns on the applicability of the "independent source doctrine," an exception to the exclusionary rule. That question we now address.

**B**

Even in those instances in which government agents make constitutional missteps during a search or a seizure, recovered evidence is not always subject to the exclusionary rule. As the Supreme Court has explained, where an "independent source" leads agents to challenged evidence, that evidence is not subject to suppression because it "would put the police in a worse position than they would have been . . . absent any error or violation." Nix v. Williams, 467

U.S. 431, 443 (1984); see also United States v. Eylicio-Montoya, 70 F.3d 1158, 1164-65 (10th Cir. 1995). We must therefore consider whether the independent source doctrine allows the admission of the seized drugs in this case, even assuming a constitutional violation.

The Court has long recognized the validity of the independent source doctrine. See Murray v. United States, 487 U.S. 533, 537 (1988) (citing Silverthorne Lumber Co. v. United States, 251 U.S. 385 (1920)). Under this exception, "evidence that has been discovered by means wholly independent of any constitutional violation" is admissible against a criminal defendant, Nix, 467 U.S. at 443, notwithstanding any antecedent Fourth, Fifth, or Sixth Amendment violation, Murray, 487 U.S. at 537. In applying the doctrine in the Fourth Amendment context, the dispositive question is whether the source of probable cause claimed by the government is "in fact a genuinely independent source of the information and tangible evidence at issue . . . ." Murray, 487 U.S. at 542; see also United States v. Griffin, 48 F.3d 1147, 1150 (10th Cir. 1995). A source is genuinely independent if the government can show that the evidence was obtained by "means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 488 (1963). By contrast, a source is not independent if, "granting establishment of the primary illegality, [the evidence has] been come at by the exploitation of the illegality." Id. The principal justification for the doctrine rests

- 11 -

> upon the policy that, while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied. So long as a later, lawful seizure is genuinely independent of an earlier, tainted one . . . there is no reason why the independent source doctrine should not apply.

Murray, 467 U.S. at 542; see also Nix, 467 U.S. at 443. The government bears the burden of showing, by a preponderance of the evidence, that there is truly an independent source for the challenged evidence. United States v. Lin Lyn Trading, Ltd., 149 F.3d 1112, 1116 (10th Cir. 1998).

Forbes argues that the independent source doctrine does not apply because there was only one continuous search of his truck. He maintains that because the search began in an unlawful manner, any evidence subsequently recovered must be excluded. According to Forbes, it is a sine qua non of the independent source doctrine that at least two discrete searches occur—one unlawful and one lawful—before the exception will allow the admission of otherwise tainted evidence. We disagree.

Certainly a classic case in which the independent source exception applies involves two separate searches. For instance, in Murray, federal law enforcement officers watched two individuals drive their vehicles into a warehouse and leave a short time later. 487 U.S. at 535. Officers followed the individuals, arrested the drivers, and discovered marijuana during a lawful search of their vehicles. Id. Several federal agents then returned to the warehouse, entered without a warrant, and observed numerous bales of marijuana. Id. Without seizing any evidence,

the agents left and thereafter applied for a search warrant without mentioning the prior entry or revealing what they saw inside. Id. at 535-36. The Court held that if the initial entry into the warehouse did not contribute to the agents' decision to apply for the later warrant or to the magistrate's decision to issue it, the warrant established a genuinely independent evidentiary source to search the warehouse, and the evidence seized during the warrant-based search could be admitted against the defendants at trial. Id. at 542.

But not every case is a classic case. It is sufficient, for purposes of the independent source doctrine, if a lawful, genuinely independent source exists to provide a constitutional basis for the agents' disputed activities. For example, in United States v. Moore, officers handcuffed a motorist for a routine traffic violation, allegedly in violation of the Fourth Amendment, and then conducted a canine search of the exterior of the motorist's vehicle. 329 F.3d 399, 402 (5th Cir. 2003). During the sniff, the canine alerted to drugs in the vehicle's trunk, which was subsequently searched. Id. Although the events unfolded within a 10-minute period, the Fifth Circuit applied the independent source doctrine. Id. at 404-05. Because the evidence was not seized as a result of the illegal arrest but was instead the direct product of a legal canine sniff conducted while an officer ran a necessary driver's license check, the doctrine permitted introduction of the seized evidence at trial. Id. It was of no moment that the alleged illegal arrest and the canine sniff all occurred as part of one brief, uninterrupted sequence of

events.  Rather, it was enough that a genuinely independent source of the evidence justified the search of the vehicle.[5]  Id. at 405.

Similarly, in this case, agents recovered the marijuana following a lawful canine inspection of Forbes' tractor-trailer rig.  Nothing that led agents to the truck's tractor was in any sense derived from the search of the trailer.  Even under the facts alleged by Forbes, border agents did not recover contraband or discover any evidence of wrongdoing when they entered the trailer.  It is therefore impossible to say that the later discovered evidence could have been the product of the earlier unconstitutional search.  See Segura v. United States, 468 U.S. 796, 815 (1984) ("[E]vidence will not be excluded as 'fruit' unless the illegality is at least the 'but for' cause of the discovery of the evidence.  Suppression is not justified unless the challenged evidence is in some sense the product of illegal governmental activity." (quotation omitted)); see also Moore, 329 F.3d at 404 ("The evidence was simply not the product of police illegality.").  In this case, the

---

[5] Forbes urges that the Sixth Circuit's decision in United States v. Buchanon, 72 F.3d 1217 (6th Cir. 1995), provides the more apt analogy to this case.  In Buchanon, police were able to conduct a canine sniff only because they had illegally seized the defendants by ordering them to sit by the side of the road without probable cause.  Because the canine sniff would not have occurred but for the officer's illegal seizure of the defendants, the court held that the independent source doctrine did not apply.  Id. at 1226.  By contrast, Forbes does not allege in this appeal that the agents illegally detained him, either by referring him to secondary inspection or by exceeding the permissible scope of a routine border stop.  Moreover, it is undisputed that Forbes consented to both Hubert's referral of his vehicle to secondary inspection and Hubert's request to conduct a canine sniff.

sole and independent source of the evidence was the legal canine sniff, which provided the agents with the necessary probable cause to enter the tractor's cab and search for contraband. See Rosborough, 366 F.3d at 1152. Although the two events may have been temporally close, the exterior canine sniff was conceptually unrelated to the search of the trailer. In other words, the canine inspection was a sufficiently distinguishable means of obtaining the necessary probable cause that an independent source for the evidence existed to purge any taint from the search of the trailer. We therefore hold that, even assuming that the search of the trailer occurred prior to the canine sniff of the exterior of the vehicle, the government has discharged its burden of showing that an independent source led to the discovery of the marijuana.

## III

We **AFFIRM** the district court's denial of the defendant's motion to suppress.