**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 20, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　　Plaintiff - Appellee,

v.

ANDREAS GAVILANAS-
MEDRANO,

　　　　　Defendant - Appellant.

No. 11-4140
(D.C. No. 2:09-CR-00926-DS-1)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **PORFILIO** and **ANDERSON**, Circuit Judges, and **BRORBY**, Senior
Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Defendant and appellant Andreas Gavilanas-Medrano pled guilty to possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He reserved, however, the right to appeal the denial of his motion to suppress evidence collected pursuant to a traffic stop of the car he was driving at the time of his arrest. The district court denied Gavilanas's motion to suppress. For the following reasons, we affirm.

## BACKGROUND

On October 16, 2009, Utah law enforcement officers received information from a confidential informant ("CI") that a grayish-silver Honda Accord or Civic, with a distinctive off-color blue bumper, would be driving north on I-15 and would possibly be carrying narcotics.[1] When officers saw a car matching that description on I-15, they notified Utah County Sheriff's Deputy Shalen Nielson, an officer with experience in narcotics detection, accompanied by a certified drug dog named Vito, and instructed him to catch up to the Honda and observe it for traffic violations.

While following the Honda, Deputy Nielson observed two traffic violations: following the vehicle ahead too closely and making a lane change

---

[1]According to the government, the CI was known and had proven reliable in the past. Mr. Gavilanas-Medrano does not dispute the reliability of the CI, nor the propriety of the initial stop of his car, although, in his reply brief in particular, he attempts to minimize the value of the tip.

without using a signal. Accordingly, Deputy Nielson, along with Utah County Sheriff's Deputy Philip Crawford, activated their patrol car's overhead lights, indicating to Gavilanas to pull his car over. Gavilanas did, in fact, pull his car over, although he did it slowly and over the distance of a mile. Deputy Nielson noticed that Gavilanas's passenger was ducking down and making "furtive" movements.

After the vehicle had come to a stop, the officers approached it, and the driver, defendant Gavilanas, speaking Spanish, identified himself. Deputy Nielson, who speaks very little Spanish, requested Gavilanas's license, registration and proof of insurance. Gavilinas complied, producing the requested documents, including a Mexican driver's license. The officer directed the car occupants to wait while he ran a check on the documents.

The officers then requested assistance from a Spanish-speaking officer to help them in communicating with the Honda's occupants. They were told that Leslie Derewonko, an agent with Immigration and Customs Enforcement ("ICE"), was nearby and would come to help them with translation. Deputy Nielson testified that, while waiting for Agent Derewonko, he intended to run his drug dog, Vito, around the exterior of the Honda. He returned to the Honda, and asked Gavilanas if there was anything illegal in the vehicle, to which Gavilanas responded negatively. Deputy Nielson further testified that Gavilanas was very nervous and repeatedly asked if he could leave. The deputy asked Gavilanas and

his passenger to get out of the Honda for safety reasons. When they got out, the passenger left his car door open.

Deputy Nielson then brought Vito to sniff around the exterior of the Honda, starting with the rear bumper. When the deputy and Vito reached the front driver's side door, the dog stopped, sniffing back and forth "more intently," and then up and down the bottom door seam. Vito continued to sniff along the front of the car, until he reached the passenger side door. Once again, Vito sniffed up and down the car door seam "more intently" than he normally did, then he stood up on his hind legs with his paws on the car and sniffed the intersection of the windshield and the hood of the car. When Vito continued on to the open passenger door, sniffing along the door seams, he stuck his head into the car area and sniffed under the dashboard and along the floorboard of the passenger seating area. Deputy Nielson testified that he interpreted Vito's behavior outside the car as an "alert" to the presence of narcotics. Vito then jumped into the car and went immediately to the back seat, where he began sniffing intently on a black garbage bag, then began scratching and pawing and trying to get underneath the bag. Deputy Nielson then pulled Vito out of the car, and the officers commenced a search of the car. They found a marijuana joint in the back seat.

At some point prior to the full search of the car, a Spanish-speaking Provo City Police Officer, Jerid Barney, arrived on the scene and told Gavilanas that Vito had alerted to the presence of drugs in the car. When he asked Gavilanas if

-4-

there were any drugs inside the car, Gavilanas responded negatively and invited the officers to "check it." Mem. Dec. at 5, R. Vol. 1 at 141.[2]

Based on the information the officers had at that point, including the marijuana joint found in the back seat, the officers obtained a search warrant and thoroughly searched the car. Under the hood, they found a black canister containing methamphetamine. Mr. Gavilanas-Medrano was subsequently arrested and charged with possession of methamphetamine with intent to distribute.

He filed a motion to suppress the evidence (methamphetamine) in his car, arguing that the methamphetamine was the fruit of an illegal search, as were incriminating statements he made at the jail. After an evidentiary hearing, the district court denied the motion to suppress. Gavilanas's main argument in the suppression hearing was that there was insufficient objective evidence that Vito had alerted to the presence of drugs in the car; rather, Gavilanas argued, Deputy Nielson only offered his subjective opinion that Vito had alerted. The district court rejected this argument, finding as follows:

> Probable cause can be based on alerts of trained or reliable drug dogs. United States v. Clarkson, 551 F.3d 1196, 1203 (10th Cir. 2009). Defendant challenges whether Vito's observed behavior constituted an alert for purposes of probable cause. He appears to cite United States v. Parada, 577 F.3d 1275 (10th Cir. 2009), cert. denied, 130 S. Ct. 3321 (2010), for the proposition that to be valid, a drug dog must alert in some standardized way similar to behavior

_____

[2]The district court made this finding in its memorandum decision and Gavilanas does not deny its accuracy.

described by the dog's partner in that case. The Court does not read Parada as support for that proposition, and it is rejected.

In any event, Deputy Nielson testified that an alert for Vito is reflected by a change in the dog's behavior recognizable to him such as stopping, sniffing more intently, a change in attitude and behavior reflecting that he was indeed smelling the odor of drugs. In the Court's view, Vito's behavior is not unlike that described in Parada, 577 F.3d at 1281 (dog "alerts by an increased rapid deep breathing, body stiffening, and upbreaking from the search pattern"), and United States v. Forbes, 528 F.3d 1273, 1276 (10th Cir. 2008) . . . (dog alerts "by changing its body posture and by increasing its respiration").

. . .

A trained drug dog's alert for the presence of drugs establishes probable cause. Clarkson, 551 F.3d at 1203. Vito's alert to the exterior of Defendant's car was sufficient to give officers probable cause to search defendant's car.

The Court agrees with the United States that it is unnecessary to determine if Vito's jump into the open passenger door of Defendant's car was instinctive, as found in United States v. Stone, 866 F.2d 359 (10th Cir. 1989), because Vito had already alerted to the presence of drugs while he was on the exterior of the car.

Mem. Order at 11-13, R. Vol. 1 at 147-50.

Following the denial of his motion to suppress, Gavilanas entered a conditional guilty plea to the charge of possession of methamphetamine with the intent to distribute it, in violation of 21 U.S.C. § 841(a)(1). As indicated above, he reserved his right to appeal the denial of his motion to suppress.

At sentencing, Gavilanas's United States Sentencing Commission, Guidelines Manual ("USSG") advisory Guidelines range was 87 to 108 months.

The district court imposed a below-Guidelines sentence of 50 months. This appeal followed.

## DISCUSSION

"In assessing a denial of a motion to suppress, this court accepts the factual findings of the district court, and its determination of witness credibility, unless they are clearly erroneous." United States v. Kitchell, 653 F.3d 1206, 1215 (10th Cir. 2011) (further quotation omitted). Additionally, we must "view the evidence presented at the suppression hearing in the light most favorable to the Government." United States v. White, 584 F.3d 935, 941 (10th Cir. 2009). "Judging the credibility of the witnesses, determining the weight to be given to evidence, and drawing reasonable inferences and conclusions from the evidence are within the province of the district court." United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998). The ultimate question of the reasonableness of the government's action under the Fourth Amendment is reviewed de novo. Kitchell, 653 F.3d at 1216 (further quotation omitted).

Mr. Gavilanas-Medrano does not dispute the reasonableness of the officers' initial stop of his car. He argues only that the government's "failure to provide evidence of a drug dog's alert behavior precludes a court finding of probable cause." Appellant's Br. at 5. As he argued below, Gavilanas claims that the only evidence that Vito had alerted to the presence of drugs in Gavilanas's car was

Deputy Nielson's own subjective opinion that Vito had alerted. He argues that is insufficient, and that the district court clearly erred in finding Vito had alerted to the presence of contraband.[3]

We begin by detailing Deputy Nielson's testimony in the suppression hearing about Vito's conduct while sniffing Gavilanas's car:

> [Vito] [s]tarted doing an exterior sniff on the rear . . . bumper.
>
> . . .
>
> As he went up the side of the vehicle, he moved fluidly up the side of the vehicle, . . . just a smooth motion as he was sniffing up and down the vehicle. Got to the front driver's side door. At the front of the driver's side door, he began sniffing that door seam, up and down the seam as well as the bottom seam. This is what I would call an alert, that he has then smelled the odor of some kind of narcotic or some kind of a drug. He stopped in that area and sniffed more intently than his initial sniffing had been up and down those door seams along the bottom of the vehicle and up towards the hood.

Tr. of Hr'g at 29-30, R. Vol. 3 at 32-33. Deputy Nielson then described how Vito went around the front of the car without "alerting" and then moved on to the passenger side door:

> On the outside of the [passenger] door, he sniffed up and down the seam. Again, he stopped, sniffed more intently than he normally had, which is an alert for the odor of drugs. He then stood up on his hind legs, . . . his front legs on the vehicle and began sniffing up the

---

[3]Mr. Gavilanas-Medrano attempts to argue that we should not be viewing the district court's finding that Vito alerted for clear error; rather, we should view the ultimate determination of Fourth Amendment reasonableness de novo. We specifically stated in Parada that we view the district court's "finding that the dog alerted . . . for clear error." 577 F.3d at 1281. We see no reason to depart from that standard in this case.

front door seam into the hood of the vehicle, and sniffed the intersection of the windshield and the hood of the vehicle, in that area.

Id. at 33-34. Deputy Nielson testified that Vito's "actions at that time when he stopped and stayed in that area longer than he had other places, where he's sniffing more intently, a change of attitude, change of behavior was an alert to me that he was indeed smelling the odor of drugs." Id. at 34. Vito then:

sniffed the open side front passenger door from the outside, sniffed up and down the bottom floor seam, and stayed in that area and began sniffing again more intently up the front seam as well as underneath the dash. Again, he was still outside the vehicle, sticking his nose into the vehicle, sniffing up and down underneath the dashboard area and the floorboard of the passenger side.

Id. at 34-35. The deputy testified that he thought Vito's behavior while sniffing under the dashboard and on the floorboard to be an alert.

After the suppression hearing, both parties filed memoranda for the district court. Gavilanas argued that "Vito's behavior outside the car did not create probable cause." Mem. at 13, R. Vol. 1 at 27.[4] The district court denied his motion to suppress.

---

[4]Gavilanas made a number of arguments below, which he does not pursue on appeal, including questioning the reliability of the confidential informant's tip and the reliability of Vito as a detector of contraband. We note that the United States Supreme Court has recently granted certiorari in a case presenting a question relating to the standard for determining the reliability of a drug detection dog. See Florida v. Harris, 2012 WL 986836, No. 11-817 (March 26, 2012). That issue is not before us in this appeal.

We have observed that "[p]robable cause to search a vehicle requires only 'a fair probability that contraband or evidence of a crime will be found in [the vehicle].'" Kitchell, 653 F.3d at 1223 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). We have further held, in numerous cases, that "a reliable narcotics-detection dog's alert to a vehicle suffices to establish this 'fair probability.'" Id.; see also United States v. Parada, 577 F.3d 1275, 1282 (10th Cir. 2009) ("A trained narcotic dog's detection of the odor of an illegal substance emanating from a vehicle creates a 'fair probability' that there is contraband in that vehicle."); United States v. Ludwig, 10 F.3d 1523, 1527 (10th Cir. 1993) ("[A] dog alert usually is at least as reliable as many other sources of probable cause and is certainly reliable enough to create a 'fair probability' that there is contraband.").

The question, of course, is whether the government provided sufficient evidence that Vito "alerted" to the Honda, and, more particularly, whether the district court clearly erred in holding that he did. In arguing that the government failed to present such evidence, Gavilanas relies only on Deputy Nielson's testimony that Vito sniffed "more intently" at certain places, and on the deputy's testimony, based on his experience with Vito, that he detected that Vito "alerted." Gavilanas omits the evidence that Vito stood up on his hind legs and sniffed along the seam of the windshield and hood, the very area where contraband was found, which Deputy Nielson testified was an alert, or that Vito interrupted his "fluid"

-10-

movement along the car.  We agree with the district court that there was "upbreak" from the search pattern and "change in body posturing" as we have seen in other cases.  At least, the district court did not clearly err in so finding.

Furthermore, when the deputy testified, "the district court was able to judge his credibility."  Parada, 577 F.3d at1281; see also United States v. Ludwig, 641 F.3d 1243, 1253 (10th Cir.) ("[I]t is incumbent on [the defendant] to show that the district court's resolution of . . . [a] credibility contest was not just wrong but clearly or pellucidly (and so reversibly) wrong."), cert. denied, 132 S. Ct. 306 (2011).  The district court found him credible, and we cannot say that the court clearly erred in concluding that the government demonstrated that Vito alerted to the scent of drugs in the Honda.[5]

Even were we to not conclude that the government demonstrated that Vito alerted to the Honda, thereby justifying the search of the car, we would determine that, as did the district court, the totality of the circumstances (the reliable tip describing the Honda with an unusual off-color blue bumper, Vito's change in

---

[5]Mr. Gavilanas-Medrano argues that the government must point to "objective" conduct of the sort the officer in Parada testified his dog exhibited–"increased rapid deep breathing, body stiffening, and upbreaking from the search pattern itself."  Parada, 577 F.3d at 128.  We do not read Parada as establishing any kind of exemplar of the kind of behavior an officer must recite regarding his drug detection dog; rather, it simply suggests the kinds of behaviors which can demonstrate that a dog alerted.  In our view, Vito's standing up on his hind legs and sniffing outside the hood of the Honda could certainly constitute an "upbreaking" from the search pattern.  Indeed, the district court explicitly found that Vito's behavior was similar to that described in Parada.  There is no clear error in that finding.

-11-

behavior while sniffing the car, the length of time Gavilanas took to pull over his car, his considerable nervousness and the furtive movements of his passenger) gave the officers probable cause to search the car. See United States v. Munoz-Nava 524 F.3d 1137 (10th Cir. 2008) (holding that even if dog's conduct did not amount to an alert, it could be considered in the totality of the circumstances establishing probable cause).

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's order.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge