# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 13, 2021

Lyle W. Cayce
Clerk

No. 20-20062

United States of America,

*Plaintiff—Appellee*,

*versus*

Christhian Josue Fuentes Rodriguez,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No.4:19-CR-112-1

Before Jolly, Duncan, and Oldham, *Circuit Judges*.

Per Curiam:*

This case began with a traffic stop. Deputy Crissmon-Stewart of the Fort Bend County Constable's Office pulled over a Dodge Charger that was going 55mph in a 35mph-zone. Things started to go south when the deputy discovered that the driver, defendant Christhian Rodriguez, had no license or insurance. The deputy thus could not allow Rodriguez to drive the vehicle,

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-20062

but he expressed a willingness to release the car to a friend or family member who had a valid license. Deputy Crissmon-Stewart then ran the license plate number and discovered that it did not match the make and model of the vehicle he had just stopped. He then checked the VIN against the license plate number and learned that it, too, did not match. In the light of this new information, he suspected that the Charger was stolen and, accordingly, the possibility of releasing it to a friend or family member of Rodriguez was off the table.

After running the plate, Deputy Crissmon-Stewart walked up to the driver-side window and asked Rodriguez to step out of the vehicle. He handcuffed Rodriguez and put him in the back of the police car. As this was going on, Deputy Crissmon-Stewart and Rodriguez went back and forth about whether the deputy had permission to search the vehicle. Eventually, in the back of the police car, realizing that the car he was driving was about to be searched, Rodriguez stated clearly that he did not consent to a search. Deputy Crissmon-Stewart responded that he had probable cause to search without consent, which he then proceeded to do.

The police discovered a handgun, six bullets, two scales, and baggies inside the car. Rodriguez, who is a citizen of Honduras, was indicted in federal district court for violating 18 U.S.C. § 922(g)(5)(A), which prohibits aliens unlawfully present in the United States from possessing firearms or ammunition. Rodriguez moved to suppress the gun and bullets on the ground that they had been obtained through an unconstitutional search. After the district court denied his motion, Rodriguez entered a guilty plea, expressly reserving his right to appeal the denial of the motion to suppress. Now, we provide a more detailed statement of the facts.

2

## I.

## A.

On January 29, 2019, Deputy Crissmon-Stewart pulled over a white Dodge Charger in Katy, Texas, for going 55mph in a 35mph-zone. Deputy Crissmon-Stewart approached the driver-side door and explained that he had stopped the vehicle because of the speeding violation. The driver and sole occupant of the vehicle, defendant Christhian Rodriguez, explained that he was speeding because he was late for work. Deputy Crissmon-Stewart later testified that, while standing there at the driver-side door talking to Rodriguez, he smelled the odor of marijuana mixed with that of cologne, but he did not mention it at the time.

The deputy then asked Rodriguez for his license and proof of insurance. Rodriguez had neither. He said that he was working on acquiring insurance, that he had purchased the car from his uncle, and that he was making payments on it. At this point, the deputy returned to his vehicle and ran the plates. He discovered that they did not belong to a Dodge Charger.

Deputy Crissmon-Stewart walked back up to the driver-side door of the Charger. He observed that the registration tags on the Charger were expired. He then told Rodriguez that, under the circumstances, he could not let him drive and asked if there was anyone he could call to pick up him and the car. He also asked if there was anything illegal, like marijuana, in the vehicle. He asked Rodriguez, "Do you smoke?" Rodriguez responded, essentially, that, while he did smoke, there was nothing illegal in the car.

The deputy again walked back to his patrol car and checked the license plate number against the VIN. They did not match. He also checked reports of stolen vehicles in Fort Bend County. Nothing turned up, though as Deputy Crissmon-Stewart noted at the suppression hearing, the search was limited to records from Fort Bend County and the negative result did not

mean that the car was not stolen. It could have been stolen in another county, for instance, or stolen but not reported as such.

Deputy Crissmon-Stewart then walked back up to the driver-side door at third time and asked Rodriguez to step out of the vehicle. Rodriguez complied. As Rodriguez was exiting the vehicle, Deputy Crissmon-Stewart asked him once again if there was anything illegal in the car and did Rodriguez mind if he checked to make sure. It is somewhat difficult to make out, from the audio recording available to us, exactly what Rodriguez said in response, but it sounds as though he reiterated that there was nothing illegal in the car and, somewhat reluctantly, gave the deputy consent to search. Deputy Crissmon-Stewart then guided Rodriguez toward the back of the car. As they were walking, the deputy asked, "So you're giving me consent, right?" Rodriguez did not respond.

Both parties standing behind the Charger, Deputy Crissmon-Stewart patted Rodriguez down and then handcuffed him, stating, "I'm going to detain you." He told Rodriguez that he was not under arrest, but that he would be detained until the deputy could "figure out what's going on." Deputy Crissmon-Stewart walked the handcuffed Rodriguez to his patrol car and put him inside. At this point, Rodriguez presumably realized that the car was about to be searched and clearly stated that he did not consent. Deputy Crissmon-Stewart replied, "but I have PC because this car and that tag don't go together." He proceeded to search the vehicle, with the help of another law enforcement officer who had arrived at the scene.

The search produced two scales, baggies, six 0.38 caliber bullets, and a 0.38 caliber revolver. According to the government, Rodriguez's detainment became an arrest either at the moment the bullets were discovered or at some unspecified subsequent time. After completing their search, the officers called a tow truck to come collect the vehicle.

B.

Rodriguez was indicted in federal district court for violating 18 U.S.C. § 922(g)(5)(A), a provision that prohibits aliens unlawfully present in the United States from possessing firearms or ammunition. Rodriguez is a citizen of Honduras. According to Immigration and Customs Enforcement records, Rodriguez illegally entered the United States as a minor in 2005. His removal was ordered by an immigration judge in 2006, but Rodriguez was not then in custody and the order was not enforced. Federal agents encountered Rodriguez in 2018 but declined to enforce the removal order at that time because Rodriguez qualified for the Deferred Action for Childhood Arrivals program. The deferral of removal granted to Rodriguez under that program expired in December 2018. It is thus indisputable that, as of January 2019, Rodriguez was unlawfully present in the United States.

Following the indictment, Rodriguez moved to suppress the gun and bullets on the ground that they had been discovered through an unlawful search. The district court denied the motion, stating, in relevant part:

> In my view, the marijuana is simply a red herring. It's not a problem at all because I'm not—I'm of the opinion that, first, the officer had probable cause to detain the vehicle whether or not Mr. Fuentes was under arrest or not. He could certainly have still let Mr. Fuentes go, but he was not going to turn the vehicle over to Mr. Fuentes unless—or turn it over to anyone unless someone showed up with the appropriate identification and/or right to drive. And under the circumstances where the tag and the VIN number did not match, he certainly had the right to seize the vehicle until the rightful owner came.
>
> Since Mr. Fuentes was not an owner, Mr. Fuentes cannot protest the—whether or not he searched the vehicle or not. I'm not really sure that his—he has the right to give permission and withdraw it and then say, I didn't give you

permission. But at the time in which he, let's say, withdrew permission, it's the Court's opinion that the officer had full authority to detain the vehicle and hold it and do an inventory search of it pursuant to releasing it to the rightful owner. So it would—what was seized at the moment of the search, in the Court's opinion, would have been found or seized at the point of inventory whether it was at the scene or at some point later on. In the Court's opinion, the motion to suppress should be denied. And that will be my order to be entered in this matter.

Rodriguez subsequently entered a guilty plea, expressly reserving his right to appeal the district court's order denying his motion to suppress. Rodriguez was sentenced to a one-year term of imprisonment to be followed by a three-year term of supervised release. He timely appealed.

## II.

When reviewing an order denying a motion to suppress, this court reviews factual findings for clear error. Legal determinations are reviewed *de novo*. *United States v. Hearn*, 563 F.3d 95, 101 (5th Cir. 2009). "Factual findings are clearly erroneous only if a review of the record leaves this Court with a definite and firm conviction that a mistake has been committed." *Id.* (cleaned up). We shall affirm if the judgment of the district court can be supported on any ground, regardless of whether the district court actually issued its judgment on that basis. *See Bickford v. Int. Speedway Corp.*, 654 F.2d 1028, 1031 (5th Cir. Unit B Aug. 1981) ("[R]eversal is inappropriate if the ruling of the district court can be affirmed on any grounds, regardless of whether those grounds were used by the district court.").

## III.

Although the district court issued its judgment on the basis of the inevitable discovery doctrine, we find this case more easily resolved by considering whether probable cause existed to support a search of the vehicle

at the scene of the arrest. In short, it did. Deputy Crissmon-Stewart testified that he smelled an odor of marijuana mixed with cologne coming from Rodriguez or the vehicle. That alone created probable cause to believe there might be marijuana in the vehicle and justified a search. *See United States v. Lork*, 132 F. App'x 34, 35 (5th Cir. 2005) ("[A] detectable odor of marijuana emanating from a vehicle provides probable cause for the search of a vehicle.") (citation omitted); *United States v. Moore*, 329 F.3d 399, 405 (5th Cir. 2003) ("Because the police smelled marijuana as they approached the vehicle, they had probable cause to search the vehicle."); *United States v. Ibarra-Sanchez*, 199 F.3d 753, 760 (5th Cir. 1999) ("This Court has consistently held that the smell of marihuana alone may constitute probable cause to search a vehicle.").

## IV.

The district court did not err in denying Rodriguez's motion to suppress because the smell of marijuana created probable cause to believe there was marijuana in vehicle, and that alone justified a search of its contents. Accordingly, the judgment of the district court is hereby AFFIRMED.